FILED
United States Court of Appeals
Tenth Circuit

September 11, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

VINCENT BRET WATSON,

        Defendant-Appellant.

No. 12-5104

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:11-CR-00166-CVE-2)**

---

J. Lance Hopkins, Tahlequah, OK, for Defendant-Appellant.

Joel-lyn A. McCormick, Assistant United States Attorney (Danny C. Williams, Sr., United States Attorney, with her on the brief), Tulsa, OK, for Plaintiff-Appellee.

---

Before **HOLMES**, **MURPHY**, and **MATHESON**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Defendant-Appellant Vincent Watson was convicted by a jury of five

counts relating to the cultivation and distribution of marijuana. He raises three

challenges to his conviction on appeal: (1) that his second counsel provided

ineffective assistance by failing to adequately pursue, and communicate with him about, the possibility of entering into a plea agreement with the government; (2) that the district court violated his rights under the Speedy Trial Act ("STA" or "the Act") by granting the government an ends-of-justice continuance following his co-defendant's decision to plead guilty and cooperate with the government a week before trial was scheduled to begin; and (3) that the district court improperly admitted testimony regarding Mr. Watson's previous cultivation and distribution of marijuana. For the reasons that follow, we reject all three of Mr. Watson's claims and **affirm** his conviction.

## I

Pursuant to a five-count indictment, Mr. Watson and his co-defendant, David Shuck, were charged with: one count of conspiring to manufacture marijuana in violation of 21 U.S.C. § 846 (Count 1); one count of manufacturing 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1) (Count 2); two counts of using and maintaining a place for the purpose of manufacturing marijuana in violation of 21 U.S.C. § 856(a)(1) (Counts 3 and 4); and one count of possessing with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 5). The conspiracy charged in Count 1 was alleged to have lasted from sometime in 2010 to approximately July 29, 2011. We set forth only the factual and procedural background relevant to each of Mr. Watson's three

2

claims.[1]

Following Mr. Watson's indictment and arrest, Assistant Federal Public Defender Stephen Greubel was appointed to represent him. Well before trial was scheduled to begin, Mr. Greubel met with the government on behalf of Mr. Watson to discuss the possibility of a plea agreement; the government offered to enter into a plea agreement with Mr. Watson. Under that agreement, Mr. Watson would be obliged to plead guilty to Count 3—a felony charge of using and maintaining a place for the purpose of manufacturing marijuana. In return, the government would, *inter alia*, dismiss all of the remaining charges in the indictment against Mr. Watson. Mr. Greubel relayed that offer to Mr. Watson and explained to him the consequences of pleading guilty. Mr. Watson rejected the offer, explaining to Mr. Greubel that he did not want a felony conviction on his record because that could result in the loss of his license to sell insurance.

At the January 6, 2012, pretrial conference, both Mr. Watson and Mr. Shuck stated that they intended to go to trial. Three or four days later, however, Mr. Greubel was informed that Mr. Shuck intended to plead guilty and begin cooperating with the government. Sometime between January 9 and 11, due to

---

[1]     Mr. Watson has not challenged on appeal the sufficiency of the evidence to support his convictions. In crafting our background statement, "[w]e recite the facts in the light most favorable to the jury's verdict," *United States v. Berry*, 717 F.3d 823, 827 (10th Cir.), *cert. denied*, --- U.S. ----, 134 S. Ct. 495 (2013); *accord Pratt v. Petelin*, 733 F.3d 1006, 1009 (10th Cir. 2013), and also draw upon the district court's unchallenged factual findings.

the changed circumstances, Mr. Greubel again contacted the government to see whether the opportunity for Mr. Watson to enter into a plea agreement was still available. The government informed Mr. Greubel that, other than the third base-offense-level point for acceptance of responsibility that was included in its first plea offer, the same plea deal previously offered remained available until the end of business on January 11.

On January 11, Mr. Greubel met with Mr. Watson to relay the terms of the government's second plea offer. Again, Mr. Watson stated that he was not interested in pleading guilty and that he wanted to go to trial. Moreover, Mr. Watson informed Mr. Greubel that he had retained counsel, W. Creekmore Wallace, II, to represent him at trial and that Mr. Greubel's services were no longer needed. After the meeting, Mr. Greubel called Mr. Wallace and informed him of the government's most recent plea offer and of Mr. Watson's rejection of it. Mr. Wallace later acknowledged that he learned of the government's second plea offer as well as Mr. Watson's rejection of it, and indicated that he never personally discussed plea negotiations with Mr. Watson.

The trial was set to begin on January 17, 2012. But, in light of Mr. Shuck's recent change of plea and willingness to cooperate, the government moved to continue the trial pursuant to an ends-of-justice continuance under the STA, 18 U.S.C. § 3161(h)(7)(A). According to the government, debriefing sessions with Mr. Shuck on January 10 and 11 necessitated that it seek a continuance to further

4

investigate the information that he provided.  Specifically, the government

asserted that it required more time (1) to conduct additional debriefing sessions

with Mr. Shuck, (2) to interview numerous individuals identified by Mr. Shuck

that might be material witnesses, and (3) to obtain documents described by Mr.

Shuck.  Relying on the government's three asserted bases, the district court

granted its motion for an ends-of-justice continuance and continued the trial for

thirty-five days, until February 21, 2012.[2]

---

[2]     Mr. Watson asserts in his opening brief that the continuance granted by the district court allowed for "an additional 35 days," from the initial trial date of January 17, 2012 to the new trial date of February 21, 2012.  Aplt. Opening Br. at 26.  Mr. Watson does not explicitly identify the reasoning underlying his determination of the number of excludable days authorized by the court's continuance order; presumably, Mr. Watson did not include either the first day (January 17) or the last day (February 21) in his excludable-days computation in arriving at the thirty-five-day figure.  If he had added to the list of excludable days the first and last days, the number of excludable days would actually have been thirty-six, instead of thirty-five.  It is not entirely clear from the language of the district court's order how many days the court intended to designate as excludable.  The order indicates that "the time *between* January 17, 2012 and February 21, 2012 is excludable" under the ends-of-justice provision.  R., Vol. I, at 43 (Order, filed Jan. 13, 2012) (emphasis added).  Conceivably, this language could be read as not adding to the excludable-days tally the first *and* last days, which would make the number of excludable days thirty-four, instead of thirty-five.  Controlling precedent offers little definitive guidance on discerning the import of this or similar language that district courts employ in orders granting ends-of-justice continuances.  *See United States v. Williams*, 511 F.3d 1044, 1056 n.12 (10th Cir. 2007) ("The courts appear not to have explicitly discussed this computation issue.  When they have expressly noted the number of excludable days flowing from an ends-of-justice excludable period (e.g., from a given date "A" to date "Z"), the Supreme Court and our panels appear to have *not* counted as excludable the first day of the period.").

Thankfully, we need not delve into the minutiae of this computation question here and are content to use the thirty-five-day figure that Mr. Watson asserts for two reasons:
(continued...)

5

Prior to the newly set trial date, the government filed notice under Federal Rule of Evidence 404(b) of its intent to offer evidence at trial regarding Mr. Watson's past drug-related conduct. Specifically, the government intended to offer the testimony of two witnesses—Mr. Shuck and a then-unnamed witness—regarding Mr. Watson's cultivation and distribution of marijuana in the mid-to-late 1990s through approximately the mid-2000s. After questioning Mr. Shuck outside of the presence of the jury and over Mr. Watson's objection, the district court granted the motion as to Mr. Shuck, reasoning that such evidence was intrinsic to the crimes alleged and thus was not other-acts evidence subject to the strictures of Rule 404(b). Accordingly, at trial, the government offered Mr. Shuck's testimony regarding his and Mr. Watson's past marijuana cultivation and distribution.

The government did not call the unnamed witness specified in its 404(b) notice to testify during its case-in-chief. After Mr. Watson took the witness stand in his own defense, however, the government did call that witness in rebuttal; the

---

[2](...continued)
first and foremost, because whether the correct figure is thirty-five, thirty-six, or thirty-four has no material bearing on our substantive analysis and no party has suggested to the contrary; and, second, because the government does not contest Mr. Watson's assertion that the district court's January 2012 continuance order at issue allowed for an additional thirty-five days, thus leaving us no contested matter between the parties to resolve. To complete the picture, however, we also note that the district court subsequently granted a short additional continuance at the government's request, but it is not challenged here. The trial actually commenced on February 27, 2012.

previously unnamed witness was Ms. Shelby Armbruster. Again, over Mr. Watson's objection, the district court admitted her testimony, but for a different reason than it admitted Mr. Shuck's—that is, instead of concluding that her testimony was intrinsic to the crimes charged, or even that it was admissible under Rule 404(b), the district court concluded that it was admissible to impeach Mr. Watson's earlier testimony.

In the end, the jury found Mr. Watson guilty on all five counts. A few weeks after trial, Mr. Watson sent a letter to the district court stating that he wanted a second chance at the government's plea offer and that, for a variety of reasons, he had been unable to give it full and appropriate consideration at the time it was presented to him. Shortly thereafter, Mr. Wallace withdrew as Mr. Watson's counsel and Lance Hopkins was appointed to represent Mr. Watson. Subsequently, Mr. Watson filed a motion to vacate the jury's verdict and for a new trial on the grounds that Mr. Wallace provided ineffective assistance of counsel by failing to inform Mr. Watson of the risks of proceeding to trial and, relatedly, for failing to enter into plea negotiations with the government.

The district court denied the motion, reasoning that Mr. Wallace did not provide deficient performance because, *inter alia*, Mr. Greubel adequately informed Mr. Watson of the consequences of proceeding to trial and the potential benefits of pleading guilty, and Mr. Wallace was aware that Mr. Watson had rejected the government's two prior offers. Furthermore, the district court noted

7

that, even if Mr. Wallace's performance was deficient, "it is doubtful" that Mr. Watson could establish that he was prejudiced by the deficient performance because "[t]here is no evidence . . . that there was a reasonable probability that [Mr. Watson] would have accepted the plea offer" had Mr. Wallace re-communicated it to him.  R., Vol. I, at 235 (Op. & Order, filed May 18, 2012).

## II

We turn first to Mr. Watson's ineffective-assistance-of-counsel claim.[3]  The primary thrust of Mr. Watson's claim is that his second attorney, Mr. Wallace, provided ineffective assistance by failing to adequately discuss with him the government's plea offers and the possible consequences of proceeding to trial.

The Sixth Amendment provides defendants a right to the effective

---

[3]     Ineffective-assistance-of-counsel claims should ordinarily be brought in a collateral proceeding rather than on direct appeal.  *See United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995) (en banc).  This is because effective appellate review of such claims requires "[a] factual record [to] be developed in and addressed by the district court in the first instance." *Id.* at 1240.  Therefore, ineffective-assistance claims brought on direct appeal are "presumptively dismissible, and virtually all will be dismissed." *Id.* "Nonetheless, this court has considered ineffective assistance of counsel claims on direct appeal in limited circumstances, but only where the issue was raised before and ruled upon by the district court *and* a sufficient factual record exists." *United States v. Flood*, 635 F.3d 1255, 1260 (10th Cir. 2011); *see Galloway*, 56 F.3d at 1241–42.  Here, Mr. Watson raised his ineffective-assistance claim in the district court, the district court held a hearing on the claim—during which it developed a full factual record—and subsequently ruled on the claim; accordingly, we may address it on direct appeal. *See United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1216 (10th Cir. 2008) (reviewing an ineffective-assistance-of-counsel claim on direct appeal because the claim was "raised and ruled upon by the [d]istrict [c]ourt" and "the record [wa]s sufficiently developed for review"); *United States v. Hamilton*, 510 F.3d 1209, 1213 (10th Cir. 2007) (reviewing an ineffective-assistance-of-counsel claim because the district court addressed the claim and a full factual record was developed for review).

8

assistance of counsel, and this right "extends to the plea-bargaining process." *Lafler v. Cooper*, --- U.S. ----, 132 S. Ct. 1376, 1384 (2012). Like other claims of ineffective assistance of counsel, ones made "in the plea bargain context are governed by the two-part test set forth in *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]." *Missouri v. Frye*, --- U.S. ----, 132 S. Ct. 1399, 1405 (2012). This test requires a defendant to demonstrate that counsel's performance (1) was unconstitutionally deficient, and (2) resulted in prejudice. *See Strickland*, 466 U.S. at 687; *United States v. Flood*, 713 F.3d 1281, 1286 (10th Cir.), *cert. denied*, --- U.S. ----, 134 S. Ct. 341 (2013). "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)) (internal quotation marks omitted). And to demonstrate prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). More specifically, when a defendant's claim is that counsel's deficient performance caused him to reject a plea offer and proceed to trial, he must show that

> there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or

9

> both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385; *see Frye*, 132 S. Ct. at 1410 (holding that, to demonstrate prejudice resulting from counsel's deficient performance that caused a defendant to forgo a favorable plea offer, a defendant must show that "he would have accepted the offer to plead" and that "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented").

"In evaluating an ineffective assistance of counsel claim, we 'accept the district court's underlying factual findings unless clearly erroneous,' and 'we review de novo whether counsel's performance was legally deficient and whether any deficiencies prejudiced the defendant.'" *Rodriguez-Rivera*, 518 F.3d at 1216 (quoting *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005)). "Courts are free to address [*Strickland*'s] two prongs in any order, and failure under either is dispositive." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). The district court concluded that Mr. Watson's counsel, Mr. Wallace, did not provide

deficient performance, and that even if he had, it was unlikely that Mr. Watson could establish prejudice. We affirm solely on the latter ground—that is, assuming *arguendo* that Mr. Wallace's performance was deficient, Mr. Watson failed to prove that he was prejudiced thereby.

Mr. Watson directs nearly all of his efforts on appeal to establishing that his second counsel, Mr. Wallace, provided deficient performance by not contacting the government regarding the prior plea offers and subsequently communicating any plea offers to Mr. Watson, as well as by not adequately advising him of the potential consequences of proceeding to trial. Assuming without deciding that Mr. Wallace's failure in these respects constituted deficient performance, Mr. Watson still bears the burden of proving prejudice—*viz.*, proving, *inter alia*, that, but for Mr. Wallace's allegedly deficient performance, Mr. Watson would have accepted the government's offer. *See Frye*, 132 S. Ct. at 1410; *Lafler*, 132 S. Ct. at 1385.

Mr. Watson cannot demonstrate prejudice because he does not point to *any* evidence that he would have accepted a plea offer had Mr. Wallace discussed it with him. Instead, he merely makes two unadorned assertions that there is a reasonable probability he would have pleaded guilty had Mr. Wallace done so. *See* Aplt. Opening Br. at 24 ("The undersigned counsel submits to the Court that a review of the record establishes that if Mr. Watson would have been properly advised [of the punishment he faced] and the substantial risk that he would have

11

been found guilty . . . by the jury, there is more than a reasonable probability that [Mr. Watson would have pleaded guilty].”); Aplt. Reply Br. at 6 (“If [Mr.] Wallace . . . had inquired about the offer by contacting the Assistant U.S. Attorney[] [and] informed [Mr.] Watson of the particulars of the offer and its benefits [to] him, . . . there is more than a reasonable probability that [Mr. Watson would have pleaded guilty].”).

Thus, the most that can be said with respect to prejudice is that Mr. Watson asserts he was prejudiced; his mere self-serving statement, which does no more than open the door to conjecture, is not enough. *Cf. Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) (“[W]e remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel’s errors, and if the defendant can muster no other evidence of how he would have responded if he had received effective assistance of counsel, the inquiry will focus on the objective evidence.”). Mr. Watson must prove with evidence that there is a reasonable probability that, *inter alia*, he would have accepted the plea agreement had Mr. Wallace discussed it with him. *See Strickland*, 466 U.S. at 693 (“[T]he defendant [must] affirmatively *prove* prejudice.” (emphasis added)); *see also id.* at 695 (“In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the *evidence* before the judge or jury.” (emphasis added)). This he has not done.

Mr. Watson also does not demonstrate prejudice for the additional reason that he did not provide evidence of the other showings required by *Frye* and *Lafler*—*viz.*, that the plea offer, had he accepted it, "would have been adhered to by the prosecution and accepted by the trial court."[4] *Frye*, 132 S. Ct. at 1411; *see also Lafler*, 132 S. Ct. at 1385. Mr. Watson does not even confront these possibilities, let alone provide arguments or evidence as to why these additional requirements are met.

Mr. Watson's failure to point to any evidence in support of prejudice provides a sufficient basis, standing alone, to reject his ineffective-assistance claim. However, we also note that our independent review of the record validates the district court's conclusion that the record is devoid of evidence in support of Mr. Watson's assertion of prejudice. Instead, the evidence at least arguably supports the opposite inference. The district court found that Mr. Greubel informed Mr. Watson of both plea offers as well as the consequences of pleading guilty and of proceeding to trial. Fully apprised of this information, Mr. Watson rejected both plea offers, and the second rejection occurred after Mr. Watson knew that Mr. Shuck was cooperating with the government. Furthermore, the district court found that Mr. Watson "repeatedly" told Mr. Greubel that he would

---

[4] A defendant must also show "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385. Mr. Watson failed to discuss this requirement as well.

13

not plead guilty to a felony because that would require the forfeiture of his insurance license. R., Vol. I, at 235. In short, the inference that might reasonably be drawn from this evidence is that under no circumstances did Mr. Watson intend to plead guilty—even though he knew his co-defendant was cooperating with the government—because he would have necessarily lost his insurance license. In other words, there is no evidence that, had Mr. Wallace re-discussed the plea offer with him, Mr. Watson would have changed his mind. Accordingly, even if Mr. Wallace's failure in this regard amounted to deficient performance, we would be hard-pressed to conclude that Mr. Watson was prejudiced by it. Whether counseled by Mr. Wallace about the government's plea offer or not, Mr. Watson would have made the same decision to reject a plea deal and proceed to trial; thus, any prejudice that Mr. Watson suffered by going to trial would not have been *because of* any alleged deficient performance by Mr. Wallace.

However, lest our independent review of this evidence suggest to the contrary, let us underscore the point that is determinative here: Mr. Watson bears the burden of "affirmatively prov[ing]" that there is a reasonable probability that he would have accepted the plea had Mr. Wallace communicated the offer to him, *Strickland*, 466 U.S. at 693; *see also Frye*, 132 S. Ct. at 1410; *Lafler*, 132 S. Ct. at 1385, and this he has utterly failed to do. Were mere assertions that a defendant suffered prejudice sufficient, the prejudice prong of *Strickland* would be a formality, met in every case. Of course, it is not. Accordingly, Mr.

14

Watson's ineffective-assistance-of-counsel claim must fail.

## III

We turn next to Mr. Watson's STA claim. He contends that the district court erred in granting the government an ends-of-justice continuance following Mr. Shuck's decision to plead guilty and cooperate with the government.

As a general matter, we "review the decision to grant an ends-of-justice continuance for abuse of discretion."[5] *United States v. Banks*, --- F.3d ----, 2014 WL 3805481, at *4 (10th Cir.), *pet. for cert. filed* (U.S. Aug. 23, 2014) (No. 14-229); *accord United States v. Gonzales*, 137 F.3d 1431, 1433 (10th Cir. 1998). But "[w]hether discretion has been abused depends, of course, on the bounds of that discretion and the principles that guide its exercise." *United States v. Taylor*, 487 U.S. 326, 336 (1988). Because the STA sets forth detailed procedures for district courts to follow, appellate review of decisions made under the STA

---

[5] At oral argument, the government suggested that we should review Mr. Watson's STA claim only for plain error because he failed to specifically assert before the district court that an ends-of-justice continuance would violate his rights under the STA (as opposed to his constitutional right to a speedy trial). But, as the government conceded subsequently in the oral argument, it failed to raise this forfeiture argument in its appellate brief. "[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary." *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013), *cert. denied*, --- U.S. ----, 134 S. Ct. 1874 (2014). "[A] colorable argument could be advanced that we should overlook Mr. [Watson's] apparent failure to preserve his [STA claim] because the government forfeited the right to object to it." *United States v. McGehee*, 672 F.3d 860, 873 n.5 (10th Cir. 2012). We need not continue this preservation inquiry—*viz.*, our inquiry into whether it is appropriate to apply the plain-error standard on these facts—because, even applying the more generous abuse-of-discretion standard, we conclude that Mr. Watson cannot prevail on his STA challenge.

encompasses a review of whether the district court complied with those procedures. *See id.*; *see also Zedner v. United States*, 547 U.S. 489, 499 (2006) ("Th[e] [ends-of-justice] provision gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs."). Whether the district court complied with the Act's procedures—that is, applied the appropriate legal standards—is an issue of law that we review de novo. *See United States v. Thomas*, 749 F.3d 1302, 1308 (10th Cir. 2014) (noting that we employ "de novo review regarding compliance with the Speedy Trial Act"); *accord Williams*, 511 F.3d at 1049; *Gonzales*, 137 F.3d at 1433. "When the district court errs in deciding a legal issue, it necessarily abuses its discretion." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1186 (10th Cir. 2009) (quoting *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006)) (internal quotation marks omitted); *accord United States v. Hasan*, 609 F.3d 1121, 1127 (10th Cir. 2010). And we review any factual findings underlying a district court's ends-of-justice decision for "clear error." *United States v. Spring*, 80 F.3d 1450, 1456 (10th Cir. 1996); *accord United States v. Clark*, 717 F.3d 790, 822 (10th Cir. 2013), *cert. denied*, --- U.S. ----, 134 S. Ct. 903 (2014).

The STA generally requires that a defendant be brought to trial within seventy days of the filing of the indictment or information or the defendant's initial appearance, whichever occurs later. *See* 18 U.S.C. § 3161(c)(1); *Banks*, 2014 WL 3805481, at *5. Several periods of time, however, are excluded from

16

the seventy-day window. *See* 18 U.S.C. § 3161(h). One such exclusion is the ends-of-justice continuance, which covers "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). "Th[e] [ends-of-justice] exception to the otherwise precise requirements of the Act was meant to be a rarely used tool for those cases demanding more flexible treatment." *United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009) (alterations in original) (quoting *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir. 1989)) (internal quotation marks omitted); *see Doran*, 882 F.3d at 1515 (characterizing the ends-of-justice exclusion as a "narrow exception").

To grant an ends-of-justice continuance, the district court must "set[] forth, in the record of the case, . . . its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial," 18 U.S.C. § 3161(h)(7)(A), and consider the four factors set forth in the STA, *see id.* § 3161(h)(7)(B)(i)–(iv).[6] *See Toombs*, 574

---

[6] Specifically, with respect to those four factors, the statute provides:

> (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

(continued...)

F.3d at 1268–69. Two important functions are served by requiring the district court to set forth in the record its reasons for granting a continuance: "[f]irst, it insures careful consideration of the relevant factors by the trial court," and "[s]econd, the requirement provides the appellate court with an adequate record on which to review the district court's decision." *Williams*, 511 F.3d at 1057 (quoting *Doran*, 882 F.2d at 1515) (internal quotation marks omitted); *see*

[6](...continued)

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)–(iv).

18

*Toombs*, 574 F.3d at 1269. "Failure to address [the reasons] on the record creates the unnecessary risk of granting continuances for the wrong purposes, and encourages overuse of this narrow exception." *Doran*, 882 F.2d at 1515. We do not, however, "require district judges to address those factors that do not apply," *United States v. Occhipinti*, 998 F.2d 791, 798 (10th Cir. 1993), nor "articulate facts which are obvious and set forth in the motion for the continuance itself," *id.* at 797 (internal quotation marks omitted); *accord United States v. Loughrin*, 710 F.3d 1111, 1119 (10th Cir. 2013), *aff'd*, --- U.S. ----, 134 S. Ct. 2384 (2014).

Here, the district court began by setting forth the relevant STA provisions. In particular, the district court explicitly stated that the fourth factor under the Act required it to consider "whether the failure to grant such a continuance . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." R., Vol. I, at 41–42 (omissions in original) (quoting 18 U.S.C. § 3161(h)(7)(B)(iv)) (internal quotation marks omitted). Next, the district court noted the impetus for the government's motion: on January 10, 2012, in the shadow of Messrs. Watson's and Shuck's January 17, 2012, trial date, Mr. Shuck decided to plead guilty and to begin cooperating with the government. The court further observed that, following debriefing sessions with Mr. Shuck on January 10 and 11, the government moved on January 12 for a thirty-day ends-of-justice continuance.

The district court's analysis then set forth the three justifications for an

ends-of-justice continuance offered by the government in light of Mr. Shuck's decision to cooperate—namely, that the government needed additional time to: "(i) interview numerous individuals identified by [Mr. Shuck] to determine whether they [we]re material witnesses in this matter; (ii) conduct further debriefings with [Mr. Shuck]; and (iii) obtain documents described by [Mr. Shuck]." *Id.* at 42. Based on these factors, the district court reasoned:

> Given the circumstances cited by counsel for the government, the Court finds that an ends of justice continuance is appropriate, despite defendant's opposition. Counsel's request for additional time to prepare for the trial [is] reasonable. It is in the interests of the public that the government be given an opportunity to investigate newly discovered information that relates to the prosecution of defendant. In addition to the interests of the public, the Court has considered the defendant's interest in the speedy resolution of his criminal case and finds that a limited ends of justice continuance will not subvert defendant's interest in the prompt prosecution of this matter.

*Id.* The district court accordingly granted the government's motion; it extended the continuance for slightly longer than the government had requested, scheduling the trial to commence thirty-five days after the stricken trial date of January 17, 2012.[7]

---

[7] Mr. Watson does not argue in his opening brief that the district court erred in granting a continuance longer than the one requested by the government, so he has waived any possible argument to this effect. *See, e.g.*, *United States v. Yelloweagle*, 643 F.3d 1275, 1280 (10th Cir. 2011). Although we therefore need not (and do not) definitively opine on the matter, such an argument might be a tough row to hoe in any event. *Cf. Loughrin*, 710 F.3d at 1123 ("While perhaps the government did not need the full two months by the time of the February 2 hearing—indeed, it originally requested only one month—the facts do not indicate that the district court acted arbitrarily or

(continued...)

Mr. Watson's primary argument is that the district court's findings were insufficient to warrant an ends-of-justice continuance under the statute.[8]  On several occasions, our court has addressed whether the findings in support of an ends-of-justice continuance were sufficient.  We have found that perfunctory and conclusory orders granting continuances are insufficient.  Three examples may illustrate this principle.

In *Toombs*, we found the reasons supporting several ends-of-justice continuances inadequate where the "sole explanation contained in the record for each of the continuances [wa]s that discovery was recently disclosed and counsel consequently needed additional time to prepare for trial."  574 F.3d at 1272.  Nor was there any indication in *Toombs*—from the motions seeking continuances or from the district court's orders granting them—that the district court had considered "the nature of the recently disclosed discovery, the relevance or importance of the discovery, or why . . . it [was] proper to grant an approximately two-month continuance."  *Id.*

_____

[7](...continued)
capriciously in excluding those days from the STA clock.").

[8]      Specifically, Mr. Watson makes several arguments for the first time in his reply brief: that the government did not need additional time to conduct debriefings with Mr. Shuck or to find additional witnesses, that the continuance did not result in the government locating additional witnesses for its case-in-chief, and that the continuance was *not* proper under 18 U.S.C. § 3161(h)(7)(C).  Because these arguments were not raised in Mr. Watson's opening brief, they are waived.  *See, e.g.*, *United States v. Benoit*, 713 F.3d 1, 12 n.2 (10th Cir. 2013); *United States v. Bader*, 678 F.3d 858, 894 (10th Cir. 2012).

21

The district court's findings in support of the ends-of-justice-continuance in *Williams* also were deficient. Specifically, we concluded in *Williams* that the reasons supporting all three ends-of-justice continuances were inadequate. *See* 511 F.3d at 1056–59. The district court's first two orders did "not contain any findings," while the third order, which did contain findings—thus presenting "a somewhat closer question"—was also deficient because the district court merely noted the presence of the defendant's new counsel, who needed time to become familiar with the case. *Id.* at 1057. "Although the district court . . . mentioned the presence of new counsel," we observed, "it did not issue findings specifically addressing [the defendant's] stated grounds for a continuance, . . . [n]or did the district court otherwise comment on the issue of trial preparation time . . . [nor] hint that it weighed the proper factors under the Act . . . [or even] cite the Act's ends-of-justice provision." *Id.* at 1058.[9]

Finally, in *Gonzales*, we again concluded that the district court's ends-of-justice findings were inadequate. *See* 137 F.3d at 1434–35. There, the district court granted a continuance following representations by the government that the

---

[9]      Indeed, *Williams* is part of our long line of cases rejecting the grant of an ends-of-justice continuance where the district court failed to make *any* specific ends-of-justice findings. *See, e.g.*, *United States v. Saltzman*, 984 F.2d 1087, 1090–91 (10th Cir. 1993) (holding that the ends-of-justice continuances were inappropriate because no ends-of-justice findings were made); *Doran*, 882 F.2d at 1515 (holding that the ends-of-justice continuance was inappropriate because, although "[t]he record . . . [wa]s replete with discussions regarding why the case against [the defendant] could not proceed," it was "devoid . . . of specific findings regarding the need or justification for significant delays").

22

prosecuting attorney would be out of town shortly before the scheduled trial date, making preparation difficult, and that the following week, too, would be problematic because three witnesses would be out of town. *See id.* at 1434. The district court granted an ends-of-justice continuance, concluding that "the interests of justice outweigh the interest of the public and the defendant in a speedy trial . . . based upon the finding that counsel for the United States would be denied the reasonable and necessary time to prepare for trial." *Id.*

We held in *Gonzales* that such truncated findings were insufficient to justify the ends-of-justice continuance on several bases: first, the district court failed to consider the nature and the complexity of the case, as required under the STA; second, "there was a complete lack of inquiry concerning whether the prosecutor's absence justified a continuance on continuity of counsel grounds under § [3161(h)(7)(B)(iv)] or whether the case could be tried adequately by other government counsel"; and third, "there was no discussion concerning how much time the prosecutor actually needed to prepare for trial and no discussion of what preparations he had already made." *Id.* at 1434–35. "Without this information," we concluded,

> we fail to see how the district court adequately could have determined whether denial of a continuance would have deprived the prosecutor of "reasonable time necessary for effective preparation," 18 U.S.C. § [3161(h)(7)(B)(iv)], let alone whether the purported reasons for granting the continuance outweighed the best interests of the public and Gonzales in a speedy trial.

23

*Id.* at 1435.

Taken together, our precedents require "the record, which includes the oral and written statements of both the district court and the moving party, [to] contain an explanation of why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time." *Toombs*, 574 F.3d at 1271. "Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough." *Id.* at 1271–72. That being said, lengthy explanations are not required. *See Occhipinti*, 998 F.2d at 797–98.

The district court's findings in this case, although not expansive, go sufficiently beyond those in *Toombs*, *Williams*, and *Gonzales*.[10] As detailed

[10]   Further supporting the adequacy of the district court's findings is our holding in *Occhipinti*. There, the government sought an ends-of-justice continuance based on three upcoming and conflicting trial dates. *See Occhipinti*, 998 F.2d at 797. The district court "found that a continuance was necessary to allow the government sufficient time to prepare and stated in its written order that . . . the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial." *Id.* at 797–98 (internal quotation marks omitted). Our conclusion that these relatively sparse findings were sufficient was rooted in two justifications, both of which can equally be said about the district court's findings here: "[f]irst, the court found specifically that granting the continuance struck the proper balance between the ends of justice and the best interest of the public and the defendants in a speedy trial," and "[s]econd, the court articulated as the basis for that conclusion its belief that a continuance was necessary to allow the government sufficient time to prepare for trial." *Id.* at 798.

To be sure, we recognized that the district court's findings in *Occhipinti* were not optimal. *See id.* ("Although a more thorough and explicit articulation might have better facilitated our review of the district court's decision, the order did list the reasons

(continued...)

24

above, the district court began by setting forth the relevant STA provisions, citing the fourth factor as relevant to its decision. It was not required to explicitly discuss the other factors if they were inapplicable. *See Occhipinti*, 998 F.2d at 798. Further, the district court's findings made clear that the event necessitating the government's request for a continuance—Mr. Shuck's decision to cooperate with the government—occurred one week before the scheduled trial date. In light of this limited amount of time, the district court found that the three specific justifications for a continuance set forth by the government—interviewing potential material witnesses, conducting further debriefings with Mr. Shuck, and obtaining documents described by Mr. Shuck—were sufficient to justify a continuance under the statute.[11] Indeed, the district court specifically performed

---

[10](...continued)
supporting the finding."). However, we have nevertheless declined to eschew the reasoning in *Occhipinti* that upheld those findings. For example, we have since noted that, "although not optimally detailed," those findings in *Occhipinti* were sufficient because "the government's listing of the dates for each of the three other trials and their expected durations provided an explanation . . . of why these events, the trials, would require additional time for the government to prepare for the upcoming trial." *Toombs*, 574 F.3d at 1272. The same can certainly be said for the instant case, as the government's three reasons, adopted by the district court, in conjunction with a trial date only seven days away, provided an adequate explanation for why the government needed additional time to prepare.

[11] To the extent that Mr. Watson attempts to undercut the veracity of one of the government's three asserted justifications—the interviewing of potential material witnesses—his attempt to do so is off the mark. Specifically, he focuses on § 3161(h)(3)(A), which permits the exclusion from the seventy allotted days of "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness," and argues that Mr. Shuck was available and Ms. Armbruster was not

(continued...)

the balancing required by § 3161(h)(7)(A), noting that "[i]t is in the interests of the public that the government be given an opportunity to investigate newly discovered information" and that a "limited ends of justice continuance will not subvert defendant's interest in the prompt prosecution of this matter." R., Vol. I, at 42.

More to the point, the specific deficiencies that we found determinative in *Toombs*, *Williams*, and *Gonzales* are simply not present here. Unlike in *Toombs*, the district court here considered "the nature of the recently disclosed discovery[] [and] the relevance or importance of the discovery," and it set forth "why [it] thought it proper to grant a[] . . . continuance." 574 F.3d at 1272. Unlike in *Williams*, the district court here did not simply recognize the triggering event and grant a continuance; rather, it set forth in detail its obligations under the Act's ends-of-justice provision, it made specific findings regarding the government's asserted justifications, and it "weighed the proper factors under the Act." 511 F.3d at 1058. And finally, unlike in *Gonzales*, the district court here had the information necessary to evaluate whether the "denial of a continuance would have deprived the prosecutor of reasonable time necessary for effective

[11](...continued)
an essential witness. But the district court did not rely on § 3161(h)(3)(A) to exclude the thirty-five days at issue, and instead excluded the days via an ends-of-justice continuance granted pursuant to § 3161(h)(7)(A)—i.e., an entirely distinct statutory basis for excluding the days. Therefore, Mr. Watson's arguments regarding the availability of Mr. Shuck and whether Ms. Armbruster was an essential witness are irrelevant to our inquiry.

26

preparation," 137 F.3d at 1435 (internal quotation marks omitted), because the court understood that the new information was first acquired only a week before trial, and it explicitly noted the specific tasks that engendered the government's need for additional time, *see also Loughrin*, 710 F.3d at 1123 (in distinguishing *Gonzales*, noting that "the record here is not nearly as sparse as that in *Gonzales*").

To be sure, failing to find support in the particulars of our precedents, Mr. Watson urges us to consider the broader implications of allowing ends-of-justice continuances in cases such as this; he points out that such a "liberal" use of the ends-of-justice provision does not comport with our description of the exception as one rarely to be used. Aplt. Opening Br. at 28. More specifically, he contends that in multi-defendant cases such as this, defendants frequently decide to plead guilty and cooperate with the government close to trial, and if an ends-of-justice continuance would be warranted every time this occurred, trials could be extended for years, contrary to the goals of the Act and the purposes of the ends-of-justice provision. Given that we have consistently recognized that an ends-of-justice continuance is "to be a rarely used tool," *Toombs*, 574 F.3d at 1269 (quoting *Doran*, 882 F.2d at 1515) (internal quotation marks omitted); *see also Williams*, 511 F.3d at 1049 ("[E]nds-of-justice continuances should not be granted cavalierly."), we cannot say that Mr. Watson's argument is not worthy of serious consideration.

27

However, Mr. Watson's argument bears no relationship to the facts of this case; in other words, his argument positing a situation where trial judges reflexively grant continuances in multi-defendant cases and consequently engender long delays does nothing more than erect a conjectural bogeyman that—on these facts—cannot frighten a reasonable jurist. As noted, the district court here considered the proper factors and sufficiently set forth its reasoning in granting the government a continuance. Further, in performing the required balancing, the district court appropriately considered in its calculus the relatively short duration of the requested continuance and found that Mr. Watson's interest in the speedy resolution of this case would not be overly burdened by a "*limited ends of justice continuance*" of thirty-five days. R., Vol. I, at 42 (emphasis added).

Mr. Watson does not contend that any of the district court's factual findings were clearly erroneous. And, under abuse-of-discretion review, "when the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Taylor*, 487 U.S. at 337. In this light, we discern no basis to disturb the balance struck by the district court here. Our decision to uphold the district court's analysis should not—and cannot—be read as endorsing the routine granting of ends-of-justice continuances when defendants in multi-defendant cases decide to cooperate with the government close to trial.

28

We simply hold that under the circumstances of this case, the district court did not err in granting the ends-of-justice continuance, and Mr. Watson's rights under the STA were not violated.

**IV**

Mr. Watson's third and final claim is that the district court erred in admitting the testimony of (1) Mr. Shuck regarding Messrs. Watson's and Shuck's alleged marijuana-related conduct during the mid-to-late 1990s and during the mid-2000s, and (2) Ms. Armbruster regarding Mr. Watson's alleged marijuana distribution from 1994 or 1995 through 2000 or 2001, because it all was inadmissible other-acts evidence under Federal Rule of Evidence 404(b). The district court admitted the challenged testimony over Mr. Watson's objection. We review the district court's evidentiary decisions for an abuse of discretion, "which means we will not disturb [its] ruling absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (quoting *United States v. Stiger*, 413 F.3d 1185, 1194 (10th Cir. 2005)) (internal quotation marks omitted); *see also United States v. Commanche*, 577 F.3d 1261, 1266 (10th Cir. 2009) ("We review the district court's decision to admit evidence under 404(b) for abuse of discretion."). We address Mr. Shuck's and Ms. Armbruster's testimony in turn.

## A

### 1

We begin with Mr. Shuck's testimony.  At trial, Mr. Shuck testified that he and Mr. Watson grew marijuana together outdoors from approximately 1995 to 1999 on land Mr. Watson owned with his brothers.  Although they discontinued their outdoor grow in 1999, according to Mr. Shuck, they resumed growing marijuana together in 2005 inside a trailer situated on land owned by Mr. Watson.  The crimes charged in the instant case resulted from the indoor grow that began in 2005.  Mr. Watson challenges the admissibility of Mr. Shuck's testimony regarding their prior outdoor growing activity.

Rule 404(b) sets forth both the prohibited and (in non-exhaustive terms) the permitted uses for evidence of "crimes, wrongs, or other acts."  Fed. R. Evid. 404(b) (capitalization altered).  Such evidence is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but is admissible if offered "for another purpose, *such as* proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id.* (emphasis added).  "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition."  *United States v. Burgess*, 576 F.3d 1078, 1098 (10th Cir. 2009) (quoting *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)) (internal

quotation marks omitted); *see also United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) ("The standard for satisfying Rule 404(b) admissibility is permissive . . . ."); *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997) ("[R]ule [404(b)] is one of inclusion, rather than exclusion . . . ."), *overruled on other grounds as recognized in United States v. Hathaway*, 318 F.3d 1001, 1006 (10th Cir. 2003).

But other-acts evidence need not meet the requirements of Rule 404(b) in every case: if the other-acts evidence is intrinsic to the charged crime—that is, "inextricably intertwined" with the evidence of the charged crime—it is admissible without regard to Rule 404(b)'s prohibitions. *See United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997) (internal quotation marks omitted); *see also United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) ("Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)) (internal quotation marks omitted)).

## 2

The government filed a notice asserting its intention to introduce Mr. Shuck's testimony for permissible purposes under Rule 404(b). *See generally* Fed. R. Evid. 404(b)(2)(A) (providing for such government notice to the defense).

31

The district court decided that Mr. Shuck's testimony was admissible. However, it declined to rely on Rule 404(b); rather, the court concluded that Mr. Shuck's testimony was inextricably intertwined with the evidence of the crimes charged, and thus Rule 404(b) did not apply. Yet, we have discretion nevertheless to affirm on any ground adequately supported by the record, and we exercise that discretion here. *See United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012). Even assuming *arguendo* that the district court erred in concluding that Mr. Shuck's testimony regarding the outdoor grow was intrinsic to the crimes charged, we hold that the evidence was nevertheless admissible under Rule 404(b).[12]

"To determine whether Rule 404(b) evidence was properly admitted we look to the four-part test set out by the Supreme Court in *Huddleston v. United*

---

[12] In exercising our discretion to affirm on an alternative ground, we consider three factors: "whether the ground was fully briefed and argued here and below, whether the parties have had a fair opportunity to develop the factual record, and whether, in light of . . . [the] uncontested facts, our decision would involve only questions of law." *Harvey v. United States*, 685 F.3d 939, 950 n.5 (10th Cir. 2012) (alteration in original) (omission in original) (quoting *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004)) (internal quotation marks omitted). Here, all of these considerations militate in favor of affirming on the alternative ground of Rule 404(b). Not only was the Rule 404(b) admissibility question argued below, but Mr. Watson's briefing on appeal gives the question equal treatment with the threshold issue of whether the evidence was intrinsic to the crimes charged. Further, the record was fully developed during the course of Mr. Watson's jury trial. And Mr. Watson is not challenging any of the district court's factual findings, leaving for our resolution solely an issue of law. Accordingly, it is unquestionably proper for us to exercise our discretion to affirm on this alternative ground. *See id.* (affirming on an alterative ground when all three of the relevant factors were met); *Damato*, 672 F.3d at 844 (affirming on an alternative ground when only two of the three relevant factors were met).

*States*[, 485 U.S. 681 (1988)]." *United States v. Zamora*, 222 F.3d 756, 762 (10th

Cir. 2000). To be admissible, this test requires that those factors—often called

the "*Huddleston* factors"—be satisfied:

> (1) the evidence was offered for a proper purpose under [Rule] 404(b); (2) the evidence was relevant under [Rule] 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under [Rule] 403; and (4) the district court, upon request, instructed the jury pursuant to [Rule] 105 to consider the evidence only for the purpose for which it was admitted.

*United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000); *accord United*

*States v. Smalls*, 752 F.3d 1227, 1237 (10th Cir. 2014); *United States v. Farr*, 701

F.3d 1274, 1280 (10th Cir. 2012); *see also Huddleston*, 485 U.S. at 691–92.

Mr. Watson challenges the admissibility of Mr. Shuck's testimony on three

bases, arguing that: (1) the evidence is nothing more than impermissible character

evidence offered to prove that he acted in conformity therewith and, thus, it does

not fall within any of the permitted uses for other-acts evidence set forth in Rule

404(b)(2); (2) the other-acts evidence lacked relevance because the alleged events

occurred over a decade before the crimes charged; and (3) the district court erred

in its Rule 403 balancing when it concluded that the probative value of the other-

acts evidence was not substantially outweighed by the prejudice flowing

therefrom. In short, Mr. Watson contends that none of the first three *Huddleston*

factors are met in this case. (He does not contest the fourth *Huddleston* factor.)

We address each of the three challenged factors in turn, ultimately concluding

33

that each is met.

**a**

The first *Huddleston* factor requires us to assess whether the challenged testimony was offered for a proper purpose under Rule 404(b).  *See Farr*, 701 F.3d at 1280; *Becker*, 230 F.3d at 1232.  Although the district court admitted the evidence as intrinsic, and thus not subject to Rule 404(b), the government also maintained that the evidence was admissible under Rule 404(b) to prove, *inter alia*, Mr. Watson's knowledge and intent.  We agree that Mr. Shuck's testimony was admissible for at least these two proper purposes under Rule 404(b)—namely, to prove Mr. Watson's knowledge and intent to join the charged conspiracy with Mr. Shuck to manufacture marijuana, to use and maintain a place for the purpose of marijuana manufacturing, and to possess marijuana with the intent to distribute it.[13]

---

[13]     By focusing solely on the other-acts evidence's permitted uses to establish Mr. Watson's knowledge and intent, we do not mean to suggest that the evidence would not be admissible for other reasons consistent with Rule 404(b).  We choose to focus on knowledge and intent, however, because all of the crimes with which Mr. Watson was charged require a showing of at least one of these two categories of criminal intent, and because such other-acts evidence is frequently offered to prove both knowledge and intent in drug cases such as this, given that the two concepts are related.  *See, e.g.*, *United States v. Russell*, 109 F.3d 1503, 1507 (10th Cir. 1997) (White, J., sitting by designation) (holding that "evidence of prior drug transactions was admissible, under [Rule] 404(b), to show," *inter alia*, "intent to enter into the drug conspiracy[] [and] knowledge of the conspiracy"); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.22[2], at 404-114.8 to 404-114.11 (Joseph M. McLaughlin ed., 2d ed. 2014) [hereinafter "*Weinstein's*"] ("[T]he hypothesis justifying the admission of other-acts evidence [to prove knowledge] is similar to that invoked with intent . . . .").

Our court has time and again held that past drug-related activity is admissible other-acts evidence under Rule 404(b) to prove, *inter alia*, that the defendant had the knowledge or intent necessary to commit the crimes charged. *See, e.g.*, *United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013) ("[Defendant's] past associations and conduct with the [narcotics] conspiracy members were admissible to show his intent to join the conspiracy and the basis of the relationships between them."), *cert. denied by* --- U.S. ----, 134 S. Ct. 2157 (2014), *and* --- U.S. ----, 134 S. Ct. 1526 (2014); *United States v. Esquivel-Rios*, 725 F.3d 1231, 1240 (10th Cir. 2013) (concluding that we were "unable to fault" the district court's determination that "the evidence of [the defendant's] prior drug deals [was] relevant and admissible for a proper purpose—to show his knowledge of the drugs' presence and his intent to distribute them"); *United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005) ("This Court has repeatedly held that evidence of past crimes is admissible to establish specific intent, including intent to distribute in a drug trafficking offense."); *Becker*, 230 F.3d at 1232 ("We find the first [*Huddleston*] factor . . . satisfied because the evidence was introduced for the proper purpose of using 'prior drug involvement to show plan, motive or intent in a drug trafficking offense.'" (quoting *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992))); *United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995) ("This court has repeatedly held that 'the use of prior drug involvement to show plan, motive or intent in a drug trafficking

35

offense is appropriate.'" (quoting *Sturmoksi*, 971 F.2d at 459)); *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir. 1989) (affirming the district court's decision to admit Rule 404(b) evidence of a past instance wherein the defendant imported marijuana, reasoning that "[w]e have previously recognized the probative value of uncharged acts evidence to demonstrate motive, intent, knowledge, or plan in the context of a conspiracy prosecution" and collecting cases). The other-acts testimony of Mr. Shuck comfortably fits within these precedents.

Our decision in *United States v. Wacker*, 72 F.3d 1453 (10th Cir. 1995), aptly illustrates why this is the case. There, several defendants were charged with, *inter alia*, possession with the intent to distribute marijuana following the discovery of their alleged marijuana growing operation. *See id.* at 1460. The government sought to introduce the testimony of multiple witnesses who had previously purchased marijuana from one of the defendants and the testimony of another witness that two of the defendants had been involved in marijuana processing several years ago. *See id.* at 1468. At trial, two of the defendants disavowed having the requisite criminal intent to join the drug conspiracy and maintained that they did not have any ownership or control over the marijuana at issue. *See id.* at 1469. We held that testimony regarding their past uncharged acts "was properly admitted to show [the defendants'] intent and plan." *Id.*

As in *Wacker*, Mr. Watson's knowledge and intent were contested at trial.

36

Indeed, after Mr. Shuck's testimony, Mr. Watson took the stand and put at issue whether he had the requisite knowledge and intent to commit the crimes charged; specifically, he testified that he had never grown marijuana with Mr. Shuck, had never sold or distributed marijuana, and was unaware that Mr. Shuck was growing marijuana in the trailer located on his land, despite having visited the trailer on multiple occasions.[14]

The challenged testimony regarding Mr. Watson's previous outdoor marijuana grow with Mr. Shuck was thus admissible to prove that Mr. Watson had engaged in the charged crimes with the requisite knowledge and intent. Put differently, the evidence of Mr. Watson's prior outdoor growing activity with Mr. Shuck served to prove that Mr. Watson knew that Mr. Shuck was growing marijuana for distribution in the trailer on his land and that he intended to participate in that enterprise with Mr. Watson, as he had previously done.[15] *See*

_____

[14] We mention Mr. Watson's testimony on the matters here only to firmly underscore the point that knowledge and intent were at issue. When the court decided to admit Mr. Shuck's testimony, there would not have been any certainty, of course, that Mr. Watson would testify and dispute these elements. However, on appeal, Mr. Watson does not contest that knowledge and intent were at issue. Moreover, even if he had, it is clear that they were at issue because the government had to prove them to obtain a guilty verdict and Mr. Watson at no time conceded at trial that they were met. Whether these elements were at issue is important because, had they not been, any Rule 404(b) evidence offered to prove their presence would not have been relevant. *See Cherry*, 433 F.3d at 701 (holding that the Rule 404(b) evidence admitted to prove intent was "clearly relevant" because intent was "at issue in the trial").

[15] Mr. Watson's heavy reliance on *United States v. Sullivan*, 919 F.2d 1403 (10th Cir. 1990), is misplaced. In *Sullivan*, the government introduced testimony

(continued...)

37

*Cherry*, 433 F.3d at 700–01 (holding that a prior conviction for using a communications device to facilitate the distribution of cocaine was admissible under Rule 404(b) to prove that the defendant had the requisite intent to distribute cocaine); *Ramirez*, 63 F.3d at 943 (holding that testimony that the defendant was previously arrested for possession with the intent to distribute cocaine was admissible under Rule 404(b) to prove that he had the requisite intent to distribute cocaine); *see also Weinstein's*, *supra*, § 404.22[1][a], at 404-91 to 404-93 ("The requisite intent may be inferred from the fact that, after being involved in a number of similar incidents, the defendant must have had a mental state that is inconsistent with innocence."); *Weinstein's*, *supra*, § 404.22[2], at 404-114.8 to 404-114.11 ("[T]he hypothesis justifying the admission of other-acts evidence [to prove knowledge] is similar to that invoked with intent . . . ."). In sum, the first *Huddleston* factor is satisfied here: Mr. Shuck's testimony was admissible for

---

[15](...continued)
regarding the defendant's past drug-manufacturing activities—the "Mississippi cook"—arguing that the evidence was "part of the history of the conspiracy." *Id.* at 1413 (internal quotation marks omitted). We held that the district court erred in admitting the evidence because "the prosecutor made no effort to explain a probative purpose or connection of the earlier conduct in Mississippi to this case" and, further, because "[s]uch a general assertion as a basis for introducing evidence of prior wrongs or conduct is not sufficient for purposes of Rules 403 or 404(b)." *Id.* at 1416. This case is readily distinguishable from *Sullivan*; here, the government explained the purposes for which the evidence was offered (e.g., knowledge and intent) and, as discussed in detail *infra*, the other-acts evidence offered is clearly relevant to the crimes charged. *Cf. United States v. Maass*, 153 F.3d 729, 1998 WL 458577, at *2 (10th Cir. 1998) (unpublished) (recognizing that in *Sullivan*, "it was obvious that the 'Mississippi cook' evidence at issue was not related to the crime charged").

permissible purposes under Rule 404(b)—that is, to prove knowledge and intent.

**b**

Under the second *Huddleston* factor, the other-acts evidence must also be relevant. *See Farr*, 701 F.3d at 1280; *Becker*, 230 F.3d at 1232. Mr. Watson's only argument on this score is that Mr. Shuck's testimony related to events so removed in time from the events in question that it lacked relevance. It is true, as Mr. Watson contends, that the length of time separating the past acts and the charged conduct has a bearing on the relevancy of the other-acts evidence. In this regard, "we have noted that prior narcotics involvement is relevant when that conduct is close in time, highly probative, and similar to the activity with which the defendant is charged." *Becker*, 230 F.3d at 1232 (quoting *United States v. Wilson*, 107 F.3d 774, 785 (10th Cir. 1997)) (internal quotation marks omitted). Indeed, we have held that "two prior felony convictions [that] preceded the incident by approximately six years and . . . four years . . . transcends our conception of close in time." *Id.* (quoting *Wilson*, 107 F.3d at 785) (internal quotation marks omitted).

The outdoor marijuana growing operation about which Mr. Shuck testified occurred approximately ten to seventeen years before the crimes charged. But our holding in *Becker* regarding acts occurring four and six years prior to the crimes charged did not establish a bright-line rule for the relevance of other-acts evidence. Under the right circumstances, the "[s]imilarity of prior acts to the

charged offense may outweigh concerns of remoteness in time." *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997); *see Weinstein's*, *supra*, § 404.21[2][c], at 404-76 to 404-77 ("If the connection between the other crime and the charged crime is strong, admission may be appropriate, even if the other acts were remote in time.").

Here, any concerns about the other-acts evidence being too remote are outweighed by the similarity between the other-acts evidence and the crimes charged. The challenged testimony revealed that Mr. Watson previously cultivated marijuana with the same individual with whom he was currently charged. For all practical purposes, the other-acts evidence demonstrated that Mr. Watson previously engaged in almost the exact same conduct with the exact same person. When the similarities are this evident, we have had no trouble concluding that the "[s]imilarity of [the] prior acts to the charged offense[s] . . . outweigh[s] concerns of remoteness in time." *Meacham*, 115 F.3d at 1495; *see also Brooks*, 736 F.3d at 940 ("The fact that [Defendant] previously dealt drugs with the coconspirators helps establish the basis of the relationship between them and his intent to do the same. [Defendant] teamed up with them to deal drugs in 2000, and those relationships made it more likely he intended to team up with them again [six to ten years later in the charged narcotics conspiracy] *from 2006 to 2010*, rather than just carrying on as an independent seller." (emphasis added)).

Indeed, prior acts that were quite remote to the crimes charged have

40

frequently been deemed by us and our sister circuits to be relevant if they were sufficiently similar to those crimes. *See United States v. Rodriguez*, 215 F.3d 110, 121 (1st Cir. 2000) (holding that the "striking similarity between the acts alleged in the indictment and the prior incidents" rendered incidents that occurred fifteen years prior to the acts alleged in the indictment relevant and admissible under Rule 404(b)); *United States v. Hernandez-Guevara*, 162 F.3d 863, 873 (5th Cir. 1998) (holding that evidence of an eighteen-year-old conviction was admissible to show intent because that conviction "involved exactly the same crime as was charged in the indictment"); *Meacham*, 115 F.3d at 1495 (holding that testimony that the defendant molested his stepdaughters twenty-five to twenty-nine years prior to the crime charged—that is, transporting a minor in interstate commerce with the intent that she engage in sexual activity—was admissible to prove the defendant's intent because it "suggest[ed] a similar pattern of sexual abuse of female minor relatives made possible by exploitation of familial authority").

In fact, "[t]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." *United States v. Shumway*, 112 F.3d 1413, 1421 (10th Cir. 1997) (alteration in original) (quoting *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir. 1983)) (internal quotation marks omitted); *see Rodriguez*, 215 F.3d at 120 ("[T]here is no *per se* rule to

41

determine when a prior bad act is 'too old' to be admissible."); *see also Cherry*, 433 F.3d at 702 n.4 ("[W]e review the facts and circumstances of each case to determine whether a prior act is stale."); *cf. United States v. Mares*, 441 F.3d 1152, 1159 (10th Cir. 2006) ("Our cases make clear that the degree to which factors such as temporal distance and geographical proximity are important to a determination of the probative value of similar acts will necessarily depend on the unique facts of each case's proffered evidence.").

This is an unremarkable proposition because the second *Huddleston* factor involves a relevancy inquiry under Rule 401. *See* 485 U.S. at 691; *Becker*, 230 F.3d at 1232. That rule deems evidence relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" if "the fact is of consequence in determining the action." Fed. R. Evid. 401. Such an inquiry is necessarily a fact-laden, case-specific one; not surprisingly, it takes into account not only the temporal remoteness of the other-acts evidence from the charged crimes, but also its similarity to those crimes. Consequently, adopting an approach that would involve reflexively applying time periods found too distant in other cases to the case at hand in determining whether the other-acts evidence at issue is relevant would be wrongheaded—notably, because it would effect a marked departure from the particularized inquiry that Rule 401 contemplates.

Thus, we would be hard-pressed to conclude that the other-acts evidence—in the form of Mr. Shuck's testimony—regarding Mr. Watson's past

42

drug-related conduct with Mr. Shuck was irrelevant simply because it pertained to events that are comparatively remote from the charged crimes. In other words, we would have difficulty concluding that this other-acts evidence did not have *any* tendency to make a fact of consequence, in the form of Mr. Watson's knowledge and intent, more probable. And we in fact cannot reach that conclusion. The evidence of Mr. Watson's prior outdoor grow with Mr. Shuck had a tendency to make it more likely that Mr. Watson knew that Mr. Shuck was growing marijuana in the trailer on his land and that he intended to participate in that endeavor, as he had previously done. In sum, we conclude that the other-acts evidence—that is, the outdoor-grow testimony of Mr. Schuck—satisfies the second *Huddleston* factor.

## c

Lastly, Mr. Watson challenges the third *Huddleston* factor—whether the evidence was admissible under Rule 403. *See Farr*, 701 F.3d at 1280; *Becker*, 230 F.3d at 1232. Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. After explaining why Mr. Shuck's testimony was otherwise admissible, the district court found that Rule 403 did not preclude its admission. Although it recognized that the evidence "may prejudice" Mr. Watson, the district court

43

concluded that the evidence was "highly relevant to the offenses charged" and thus had "significant probative value."  R., Vol. I, at 80 (Op. & Order, filed Feb. 28, 2012).  Moreover, the court determined that, in any event, "the probative value of the evidence [was] not substantially outweighed by any unfair prejudice."  *Id.*

The burden facing litigants seeking to demonstrate that a district court abused its discretion when conducting Rule 403 balancing is onerous.  First, as a general matter, "our law *favors* admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule is 'an extraordinary remedy [that] should be used sparingly.'"  *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011) (alteration in original) (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)); *accord Smalls*, 752 F.3d at 1238; *Tan*, 254 F.3d at 1211.  Second, not only is exclusion under Rule 403 disfavored as a general matter, but our review of a district court's Rule 403 determination is limited: "We afford district courts 'broad discretion in making rulings under Rule 403.'"  *Cherry*, 433 F.3d at 702 (quoting *Ramirez*, 63 F.3d at 943).  We grant district courts this "considerable discretion" in performing Rule 403 balancing because "district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues."  *United States v. MacKay*, 715 F.3d 807, 839 (10th Cir. 2013) (quoting *United States v. Cerno*, 529 F.3d 926, 935–36 (10th Cir. 2008)) (internal quotation marks omitted), *cert. denied*, --- U.S. ----, 134 S. Ct.

44

1275 (2014); *accord United States v. Archuleta*, 737 F.3d 1287, 1292 (10th Cir. 2013), *cert. denied*, --- U.S. ----, 134 S. Ct. 2859 (2014).

"In determining whether evidence is properly admitted under Rule 403, we consider (1) whether the evidence was relevant, (2) whether it had the potential to *unfairly* prejudice the defendant, and (3) whether its probative value was substantially outweighed by the danger of unfair prejudice." *MacKay*, 715 F.3d at 839 (emphasis added) (quoting *Cerno*, 529 F.3d at 933) (internal quotation marks omitted); *accord Burgess*, 576 F.3d at 1098–99. The district court made findings as to all three factors that supported admission of the evidence, and Mr. Watson does not provide us with any basis to disturb the district court's decision.

In fact, Mr. Watson spends little time developing his Rule 403 argument. He generally asserts that the other-acts evidence lacked probative value due to its remoteness and its lack of connection to the charged crimes. We rejected such arguments during our analysis of the first two *Huddleston* factors *supra*.[16] First, we recognized the relevance of the challenged evidence to prove, *inter alia*, that Mr. Watson acted with the requisite knowledge and intent to commit the crimes

---

[16] To be sure, the assessment of the probative value of evidence under Rule 403 is distinct from the evidence's relevance under Rule 401 in that the measurement of probative value "is determined by comparing evidentiary alternatives." *Weinstein's*, *supra*, § 404.21[3][a], at 404-82.1. But Mr. Watson does not advance any arguments regarding the probative value of the evidence from this angle—that is, he does not argue that the challenged evidence was cumulative or unnecessary in light of the government's other evidence. Thus, we need not assess the evidence from this perspective and address only the arguments Mr. Watson presents.

charged despite the remoteness of the past acts. Second, as also demonstrated *supra*, any contention that the prior acts lack probative value due to their dissimilarity with the charged conduct is belied by the evidence. As the district court recognized in its order, "[t]he earlier marijuana grow operation involved the same people, the same controlled substance, and the same offenses." R., Vol. I, at 79. We agree with the district court that the similarities between Mr. Watson's prior conduct and the conduct charged give the other-acts evidence "significant probative value." *Id.* at 80; *see Zamora*, 222 F.3d at 762 ("The more similar the act . . . is to the charged crime, the more relevant it becomes.").

We underscore that "Rule 403 does not protect a party from all prejudice, only *unfair* prejudice." *United States v. Smith*, 534 F.3d 1211, 1218–19 (10th Cir. 2008) (emphasis added) (quoting *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)) (internal quotation marks omitted); *see Esquivel-Rios*, 725 F.3d at 1240 (noting that the prejudicial effect stemming from the capacity of certain evidence to rebut a defendant's exculpatory theory "alone is not usually enough to establish *unfair* prejudice"). We measure unfair prejudice by assessing whether the "[e]vidence . . . makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *MacKay*, 715 F.3d at 840 (quoting *United States v. Leonard*, 439 F.3d 648, 652 (10th Cir. 2006))

(internal quotation marks omitted); *see Irving*, 665 F.3d at 1213 ("[U]nfair prejudice in the Rule 403 context 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" (quoting *Tan*, 254 F.3d at 1211)).  The district court found on this record that the challenged other-acts "evidence may prejudice [Mr. Watson]."  R., Vol. I, at 80.  However, the court did *not* make a finding that the evidence would do so *unfairly*.  And we discern no support for such a finding in the record.

Moreover, we cannot say that the district court abused its discretion in ultimately deciding that the other-acts evidence had "significant probative value" that was not substantially outweighed by any possible prejudice—unfair or otherwise.  *Cf. Irving*, 665 F.3d at 1214 ("Even if . . . prejudice is found, it must *substantially* outweigh the probative value of the evidence in order to be excluded under Rule 403." (quoting *Tan*, 254 F.3d at 1212) (internal quotation marks omitted)).[17]  Indeed, we have consistently upheld district courts' Rule 403

---

[17]     Again, Mr. Watson's reliance on *Sullivan* for his Rule 403 argument is misplaced.  In *Sullivan*, the district court found the evidence prejudicial and "clearly announced [its] view that [the Mississippi cook] evidence was not relevant."  919 F.2d at 1417.  Even assuming *arguendo* that the challenged other-acts evidence was not only prejudicial, but to some degree unfairly so, unlike in *Sullivan*, the evidence at issue here had *significant* probative value; therefore, the unfair prejudicial effect had to be great to substantially outweigh this probative value, and no level of alchemy by Mr. Watson could demonstrate such an effect on this record.  Mr. Watson's reliance on *United States v. McDermott*, 64 F.3d 1448 (10th Cir. 1995), is equally unavailing.  There, the defendant was charged with, *inter alia*, engaging in a continuing criminal enterprise.  *See id.* at 1450.  The government introduced testimony that the witness had called the defendant a "pothead and a drug dealer" before the defendant threatened to have her killed, but "[t]he

(continued...)

determinations in cases such as this when the other-acts evidence at issue is sufficiently similar to the crime with which the defendant is charged. *See, e.g.*, *United States v. Conway*, 73 F.3d 975, 981 (10th Cir. 1995) ("Given the similarity of the circumstances between [the defendant's] prior drug-related arrests and the incident for which he was convicted, the probative value of the evidence was very high for the purposes of showing a common plan, knowledge, intent, and the absence of mistake or accident. Accordingly, any potentially prejudicial impact had to be extremely heavy, in order for the district court to have deemed the evidence inadmissible under Rule 403[, and in this case, it was not]."); *cf. United States v. Easter*, 981 F.2d 1549, 1554 (10th Cir. 1992) (upholding the district court's admittance of the defendant's prior cocaine dealing with a co-conspirator under Rules 403 and 404(b) when the defendant was charged with conspiracy to possess and distribute cocaine, reasoning that the acts were close in time to the charged conduct and that the uncharged acts "involved one of [the defendant's]

---

[17](...continued)
government never specifically stated the purpose for which it was offering the evidence or the precise inferences to be drawn from it." *Id.* at 1456 (internal quotation marks omitted). The district court initially excluded the evidence under Rule 403, but later altered course and admitted the evidence. *See id.* Although we recognized that the evidence could have been offered for a proper purpose under Rule 404(b), we held that the district court was right the first time, as the necessary link between the evidence and the crime charged turned out to be unexpectedly weak once the witness actually testified. *See id.* at 1456–57. This case is a far cry from *McDermott*. As we have discussed at length, the similarities between Mr. Watson's prior conduct and the charged crimes was quite strong. And, further, Mr. Shuck's testimony was nearly identical to what the government represented it would be in its notice of intent to offer Rule 404(b) evidence.

coconspirators, and involved distribution of cocaine base—the same scheme with which [the] [d]efendant was eventually charged").

The crimes with which Mr. Watson was charged were strikingly similar to the prior acts as to which Mr. Shuck testified. Therefore, this case fits comfortably within the caselaw admitting such similar other-acts evidence under Rule 403. For this reason, and because Mr. Watson has provided no basis for us to find that the district court erred in its Rule 403 balancing, the third *Huddleston* factor is also satisfied.

In sum, for the reasons stated, we affirm the district court's admittance of Mr. Shuck's other-acts testimony on the alternative ground that the testimony was admissible under Rule 404(b).

**B**

We turn next to Mr. Watson's challenge to Ms. Armbruster's testimony. Ms. Armbruster testified, as a rebuttal witness, that, *inter alia*, she purchased marijuana from Mr. Watson from 1994 or 1995 through 2000 or 2001 and had previously used marijuana with him. Mr. Watson challenges this testimony for the same reasons he challenges Mr. Shuck's; indeed, he does not distinguish between the two witnesses' testimony in his briefing and instead addresses their testimony collectively. This approach is misguided. More specifically, Mr. Watson's argument is untenable because it is based on a false premise—that Ms. Armbruster's testimony was admitted under Rule 404(b). Actually, Ms.

Armbruster's testimony was expressly admitted by the district court for

impeachment purposes, instead of as substantive evidence under Rule 404(b).[18]

---

[18]     Ms. Armbruster testified in rebuttal after Mr. Watson left the witness stand. Mr. Watson's counsel complained that his direct examination of Mr. Watson did not open the door to Ms. Armbruster's testimony because the examination only covered the approximate period of the crimes charged. Specifically, counsel contended that Mr. Watson's testimony "never went back to the time" covered by Ms. Armbruster's testimony—i.e., from 1994 or 1995 through 2000 or 2001. R., Vol. II, at 482 (Jury Trial Tr., dated Feb. 29, 2012). In other words, under the reasoning of Mr. Watson's counsel, Ms. Armbruster's testimony would be improper because it would not relate to the same time period as the substantive evidence offered by Mr. Watson's direct-examination testimony. However, the district court immediately responded and clarified the basis for the admission of Ms. Armbruster's testimony: "[Mr. Watson is] denying everything that Mr. Shuck said on the stand and I'm going to allow them to inquire as to his use and sale of marijuana. It's [i.e., Ms. Armbruster's testimony is] impeachment." *Id.* The district court underscored the basis for its ruling during the course of Ms. Armbruster's testimony. After Mr. Watson left the witness stand, Ms. Armbruster testified that she had used marijuana, and then the government asked her where she "generally g[ot] [her] marijuana from," and she testified that "[a] lot of times we got it from [Mr.] Watson." *Id.* at 492. Mr. Watson's counsel objected, and then the following exchange occurred at the bench:

> THE COURT: Mr. Watson took the stand and denied any involvement in any activities related to this case.
>
> [DEFENSE COUNSEL]: In cross-examination.
>
> THE COURT: Well, he took the stand in direct in answer to your questions and said he was not involved in a conspiracy with Mr. Shuck and did not grow or use marijuana. You asked him if he uses marijuana and they asked him if he uses marijuana, and he denied he ever distributed marijuana. I am allowing this testimony [i.e., of Ms. Armbruster].

*Id.* at 492–93. In other words, the district court expressly admitted Ms. Armbruster's testimony regarding purchasing marijuana from Mr. Watson, and using it with him, during a period earlier than the charged crimes to impeach Mr. Watson's testimony that he *never* used or distributed marijuana.

As such, Ms. Armbruster's testimony was qualitatively different than Mr. Shuck's, or any other Rule 404(b) testimony. "[E]vidence offered under Rule 404(b) is *substantive evidence* against the accused, *i.e.*, it is part of the government's case offered to prove his guilt beyond a reasonable doubt." *United States v. Haslip*, 160 F.3d 649, 654 (10th Cir. 1998) (alteration in original) (emphasis added) (quoting *United States v. Valencia*, 61 F.3d 616, 619 (8th Cir. 1995)) (internal quotation marks omitted). On the other hand, impeachment evidence serves a different purpose altogether, related to challenging witness credibility. In other words, substantive evidence is that which is "offered to help establish a fact in issue," *Black's Law Dictionary* 640 (9th ed. 2009), while impeachment evidence is offered to "undermine a witness's credibility," *id.* at 637; *see Friedman v. Rehal*, 618 F.3d 142, 153–54 (2d Cir. 2010) ("[I]mpeachment evidence . . . is offered to discredit a witness . . . to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony." (second, third, and fourth alterations in original) (second omission in original) (quoting *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993)) (internal quotation marks omitted)); *United States v. Harris*, 557 F.3d 938, 942 (8th Cir. 2009) ("Impeachment is an attack on the credibility of a witness . . . ." (internal quotation marks omitted)); *cf. United States v. Carter*, 973 F.2d 1509, 1512 (10th Cir. 1992) ("A witness' 'prior statements are admissible only to impeach or

51

discredit the witness and are not competent substantive evidence of the facts to which the former statements relate.'" (quoting *United States v. Eaton*, 485 F.2d 102, 105 (10th Cir.1973))); *cf. also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 651 (10th Cir. 2008) ("[A] prior statement offered for impeachment purposes is admissible only to show that the speaker is not worthy of belief; it is not received for the truth of the matter asserted.").

Ms. Armbruster was a rebuttal witness. Rebuttal evidence "allows a party to 'explain, repel, contradict or disprove an adversary's proof,'" *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (quoting *United States v. LiCausi*, 167 F.3d 36, 52 (1st Cir. 1999)), and its limits are within the sound discretion of the district court, *see Geders v. United States*, 425 U.S. 80, 86 (1976) ("Within limits, the judge may control the scope of rebuttal testimony . . . ."). Here, the district court expressly reasoned that Ms. Armbruster's rebuttal testimony cast doubt on the veracity of Mr. Watson's direct-examination testimony that he did not use marijuana and had never assisted Mr. Shuck in growing marijuana for distribution.[19] In other words, the district

---

[19]     This is not to say that rebuttal-witness testimony is categorically only admissible as impeachment evidence (as opposed to substantive evidence). Indeed, in certain circumstances, rebuttal evidence can constitute substantive evidence. *See Harris*, 557 F.3d at 942–43 (holding that the challenged evidence the government introduced in rebuttal was substantive evidence and "not . . . relevant for impeachment purposes" because it was "not offered to show that [the witness] was not a credible person but to show that" she was not at the defendant's home during the relevant time, making her testimony that she did not see any drug-related activity while at the defendant's home

(continued...)

52

court admitted the evidence not because it helped establish a fact at issue, but because it called into question the truthfulness of Mr. Watson's testimony. Thus, in short, the challenged testimony was "not offer[ed] . . . for any of the purposes covered by Rule 404, proper or improper, but rather to impeach credibility." *United States v. Rackley*, 986 F.2d 1357, 1363 (10th Cir. 1993); *accord United States v. Burch*, 153 F.3d 1140, 1144 (10th Cir. 1998).

When a defendant, like Mr. Watson, challenges evidence under Rule 404(b) that was admitted solely for impeachment purposes, we need not pursue the Rule 404(b) challenge any further. *See Burch*, 153 F.3d at 1143 (declining to assess the defendant's Rule 404(b) challenge to certain evidence because he "misunderstood the basis for its admission"); *Rackley*, 986 F.2d at 1363 ("We find defendant's argument based on [Rule] 404(b) standards to be incorrect because the [challenged evidence admitted via] cross-examination . . . was not 404(b) evidence. It went to the issue of the witnesses' credibility, and was properly admitted as impeachment under [Rule] 611(b)."); *cf. United States v. Crockett*, 435 F.3d 1305, 1312 (10th Cir. 2006) ("Although Defendant couches his argument in terms of the allegedly erroneous admission of evidence under [Rule] 404(b), that rule is only tangentially related to the allegation of error here. The dispositive issue is the proper scope of cross-examination.").

_____

[19](...continued)
irrelevant). However, in this case, the challenged testimony of the rebuttal witness, Ms. Armbruster, was admitted to impeach Mr. Watson's direct-examination testimony.

53

Mr. Watson's misunderstanding about the actual basis for admitting Ms. Armbruster's testimony—that is, impeachment—has resulted in him waiving through briefing omission any challenge to that true basis. *See, e.g.*, *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001) ("We will not make arguments for [a party] that it did not make in its briefs."). And it ineluctably follows that the challenge that he *has made* under Rule 404(b) cannot give him succor because it is wholly inapposite. Accordingly, Mr. Watson's challenge to Ms. Armbruster's testimony must fail.[20]

## V

For the foregoing reasons, Mr. Watson's conviction is **AFFIRMED**.

---

[20] Even if we put aside the district court's explicit statements and assume *arguendo* that Ms. Armbruster's testimony actually was admitted as substantive evidence of Mr. Watson's guilt under Rule 404(b)—rather than impeachment evidence—we would still conclude that her testimony was properly admissible other-acts evidence. Significantly, Mr. Watson does not attempt to distinguish in his Rule 404(b) arguments between the testimony of Mr. Shuck and Ms. Armbruster. In other words, insofar as there are features of Ms. Armbruster's testimony that would make it admissible under Rule 404(b), even if Mr. Shuck's testimony was not, Mr. Watson has not identified those features for us. Therefore, when we concluded *supra* that Mr. Watson's Rule 404(b) arguments regarding Mr. Shuck were untenable and, consequently, must fail, we necessarily addressed the merits of any tacit Rule 404(b) arguments advanced by Mr. Watson regarding Ms. Armbruster and reached the same conclusion—*viz.*, in rejecting Mr. Watson's arguments regarding Mr. Shuck's testimony, we simultaneously sounded the death knell for any of his Rule 404(b) arguments regarding Ms. Armbruster's testimony.

54