FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellant,

v.

JONATHAN KEARN,

　　Defendant - Appellee.

No. 23-3029

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. Nos. 5:19-CV-04032-DDC &**
**5:13-CR-40057-DDC-1)**
_____

James A. Brown, Assistant United States Attorney (Kate E. Brubacher, United States Attorney, with him on the briefs), United States Attorney's Office, District of Kansas, Topeka, Kansas, for Plaintiff-Appellant.

Kayla Gassmann, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, with her on the brief), Kansas Federal Public Defender's Office, Kansas City, Kansas, for Defendant-Appellee.
_____

Before **TYMKOVICH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.

Jonathan Kearn was indicted on three child pornography offenses involving his children. Even though Mr. Kearn faced an upper exposure of 30 years' imprisonment on the charges, the government offered a plea agreement for a 10-year sentence in

exchange for Mr. Kearn's guilty plea to one of the counts. After a six-minute conversation with his trial counsel discussing the plea agreement he chose to reject the offer and proceed to trial. He was convicted on all three counts and sentenced to 24 years in prison. He exhausted his appeals in federal court.

Mr. Kearn then filed a pro se 28 U.S.C. § 2255 motion, arguing his trial counsel was constitutionally ineffective during the plea-bargaining phase. The district court appointed counsel and, after an evidentiary hearing, granted the motion, finding (1) his trial counsel provided deficient advice about the proposed plea deal, and (2) there was a reasonable probability that, but for counsel's errors, he would have pleaded guilty. The court ordered the government to reoffer the plea, concluding no reasonable person would have rejected the offer knowing and understanding its contours and the sizeable reduction in sentence exposure. It then accepted Mr. Kearn's guilty plea, vacated the prior judgment, and resentenced him to 10 years' imprisonment.

We affirm. The district court correctly concluded that trial counsel's brief discussion with Mr. Kearn was inadequate to explain the complexities of the plea and that counsel had supplied inaccurate and misleading information in that conversation. Given the substantial difference in sentencing exposure—20 years—and the evidence suggesting Mr. Kearn was amenable to pleading guilty had he been adequately advised, the court reasonably found that Mr. Kearn would have accepted a properly presented plea deal and avoided trial.

2

## I.  Background

A grand jury indicted Mr. Kearn in 2013 on three charges: (1) permitting his minor children to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, 18 U.S.C. § 2251(b); (2) distributing a visual depiction of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(2); and (3) possessing a visual depiction of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(4)(B).  Mr. Kearn was convicted by a jury on all three charges and sentenced to 24 years in prison.  In 2019, Mr. Kearn filed a motion for relief under 28 U.S.C. § 2255 asking the court to vacate his sentence based on ineffective assistance of trial counsel.

The district court held an evidentiary hearing on April 19, 2021, to resolve the factual issue of whether Mr. Kearn's counsel provided ineffective assistance during the plea-bargaining phase.  Mr. Kearn, Mr. Kearn's trial counsel, and Branden Bell, a criminal defense attorney based in Kansas City, testified at the hearing.  Mr. Kearn testified to his understanding of the plea agreement at the time it was offered, and that he would have accepted it if he had been properly advised by counsel.  Counsel testified to his discussion with Mr. Kearn about the plea.  And Mr. Bell testified to his practice of explaining plea agreements to defendants who are reluctant to plead guilty.

These facts are taken from the district court's order and evidentiary hearing transcripts.  Prior to trial, the government offered Mr. Kearn a plea deal under Federal Rule of Criminal Procedure 11(c)(1)(C), allowing Mr. Kearn to plead guilty only to the possession offense in exchange for a sentence of 10 years.  Mr. Kearn's trial

3

counsel discussed the government's plea offer with Mr. Kearn once for six minutes. Although counsel recognized the plea offer was "huge" for Mr. Kearn given his sentencing exposure at trial (30 years), counsel did not advise Mr. Kearn on whether he should accept the offer, failed to weigh the pros and cons of the offer, and neglected to explain the mechanics of a Rule 11(c)(1)(C) plea. Counsel also told Mr. Kearn he would need to supply the factual basis, or facts underlying the offense, for the guilty plea in court. But counsel did not discuss the possibility that the factual basis could instead be provided by the government or the presentence report.

Mr. Kearn's counsel also testified that at the end of the six-minute meeting, Mr. Kearn told him "he would not plead guilty" because "he didn't do it—didn't do what he was charged with." App. Vol. II, 454. Counsel noted in response it was "too bad there's not a no contest plea." *Id.* Later, Mr. Kearn's counsel called the prosecutor in the case and left a voicemail declining the government's plea offer. He explained Mr. Kearn said, "he didn't do it," so "that's a problem." *Id.* at 455. But counsel testified he thought there was still a chance Mr. Kearn *would* plead guilty until moments before trial.

Mr. Bell testified about the problems with trial counsel's short conversation with Mr. Kearn. He explained it is common for defendants charged with sensitive crimes to profess their innocence. But that he tries to lower the "psychological hurdle," especially when the plea deal offers a substantially lower sentence, by spending about an hour to an hour and a half discussing a plea agreement. If the defendant remains reluctant, Mr. Bell testified he would continue those conversations

4

over multiple hours and multiple meetings. Mr. Bell said he has never discussed a plea agreement in only six minutes.

Mr. Kearn testified at the evidentiary hearing that it would have been difficult to admit the facts of his offense in open court before his friends and family because the crimes involved his own daughters. But he also testified that if he had known he did not have to provide the factual basis himself he would have been willing to plead guilty.

## II. Discussion

### A. Legal Standards

A prisoner in federal custody may move to vacate his sentence if such "sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a). The Sixth Amendment "provides defendants a right to the effective assistance of counsel, and this right 'extends to the plea-bargaining process.'" *United States v. Watson*, 766 F.3d 1219, 1225 (10th Cir. 2014) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)).

In evaluating challenges to guilty pleas based on ineffective assistance of counsel, the Supreme Court has "held 'the two-part *Strickland v. Washington* test applies.'" *Lafler*, 566 U.S. at 162–63 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). Under *Strickland*, the defendant must first show "counsel's performance was deficient," and second, "the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687. To show deficiency, "a defendant must show that counsel's representation 'fell below an objective standard of

5

reasonableness.'" *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting

*Strickland,* 466 U.S. at 688)).  And to show prejudice, "[t]he defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694.

To show prejudice in "the context of pleas, a defendant must show the

outcome of the plea process would have been different with competent advice."

*Lafler*, 566 U.S. at 163 (2012).  The prejudice inquiry is largely objective.  *United*

*States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021).  A defendant's "mere

allegation" that he would have pleaded guilty "but for his counsel's errors, although

necessary, is ultimately insufficient to entitle him to relief."  *Miller v. Champion*,

262 F.3d 1066, 1072 (10th Cir. 2001).  We instead look for contemporaneous evidence,

i.e., "the factual circumstances surrounding the plea," to determine if there is a

reasonable probability the defendant would have accepted the plea deal.  *Heard v.*

*Addison*, 728 F.3d 1170, 1183 (10th Cir. 2013) (internal quotation marks omitted). !!!

We review the district court's legal rulings on a § 2255 motion de novo and its

findings of fact for clear error.  *United States v. Viera*, 674 F.3d 1214, 1217 (10th

Cir. 2012).  And "[i]n evaluating an ineffective assistance of counsel claim, we accept

the district court's underlying factual findings unless clearly erroneous, and we review de

novo whether counsel's performance was legally deficient and whether any deficiencies

prejudiced the defendant." *Watson*, 766 F.3d at 1226 (internal quotation marks omitted).

## B. Deficient Performance

The first *Strickland* prong requires that the defendant show deficient advice in the plea-bargaining process. The government contends the district court erred in finding deficient performance because Mr. Kearn never intended to plead guilty to the charges no matter how he was counseled prior to trial.

To show counsel's assistance was constitutionally deficient, the errors must be so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Hanson v. Sherrod*, 797 F.3d 810, 826 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687). "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Whether counsel is deficient "is necessarily linked to the practice and expectations of the legal community: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Hinton v. Alabama*, 571 U.S. 263, 273 (2014) (internal quotation marks omitted).

The district court found Mr. Kearn's counsel deficient on several fronts. First, he failed to explain accurately the benefits and burdens imposed by a Rule 11(c)(1)(C) plea. Under Rule 11(c), when a court accepts the plea, it is bound to sentence the defendant to the agreed-upon sentence, and if it rejects the plea, the defendant may withdraw the plea. *See* Fed. R. Crim. P. 11(c)(1)(C) ("[A]

7

recommendation or request binds the court once the court accepts the plea agreement");

*see also* Fed. R. Crim. P. 11(c)(5)(B) ("If the court rejects a plea agreement . . . the court

must . . . give the defendant an opportunity to withdraw the plea.").[1]  As Mr. Bell testified

at the evidentiary hearing, these types of pleas are popular with defendants because

they provide certainty—defendants either receive the sentence agreed to or they can

withdraw their plea.

---

[1] In relevant part, Rule 11(c) provides:

(3) Judicial Consideration of a Plea Agreement.

> (A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
> (B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.

\*\*\*

(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):

> (A) inform the parties that the court rejects the plea agreement;
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c).

After the evidentiary hearing, the district court determined counsel failed to explain that (1) if the court accepted Mr. Kearn's plea, he would be sentenced to 10 years, and (2) if the court rejected it, Mr. Kearn would have the opportunity to withdraw the plea. In fact, the district court found counsel failed to explain anything at all about Rule 11. In particular, there was no discussion of, or proposed solution to, Mr. Kearn's dilemma—he did not want to personally supply the factual basis for the plea. Instead, as the district court found, counsel overstated the burdens by incorrectly informing Mr. Kearn he would have to *personally* supply the factual basis for the guilty plea in court. It is true that under Rule 11, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). And to "determine whether a factual basis exists for the defendant's plea, the district court must compare the conduct admitted or conceded . . . with the elements of the charged offense to ensure the admissions are factually sufficient to constitute the charged crime." *United States v. Carillo*, 860 F.3d 1293, 1305 (10th Cir. 2017). We require a factual basis "to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *United States v. Landeros-Lopez*, 615 F.3d 1260, 1263 (10th Cir. 2010) (quoting *United States v. Keiswetter*, 860 F.2d 992, 995 (10th Cir. 1988)).

But the *defendant* does not have to provide the factual basis narrative. The district court "may look to answers provided by counsel for the defense and government, the presentence report, or . . . whatever means is appropriate in a specific case—so long as the factual basis is put on the record." *United States v. Moran*, 452 F.3d 1167, 1171

9

(10th Cir. 2006) (internal quotation marks omitted).  Counsel failed to instruct Mr. Kearn that the factual basis to validate his plea may come from the government or presentence report, and incorrectly told Mr. Kearn that he was required to personally supply it.  This mattered to Mr. Kearn because he did not want to personally describe the facts of his offenses—which involved his daughters—before his family and friends in open court.

Thus, the district court determined this inadequate explanation undermined Mr. Kearn's ability to adequately weigh the pros and cons of the plea agreement.  In the plea agreement context, counsel has a "critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'"  *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)).  Because counsel understated the benefits and overstated the burdens of the plea offer, Mr. Kearn could not make an informed choice about whether to accept it.

The district court also found trial counsel did not understand the nuances of this kind of plea deal, which contributed to the inadequacy of the legal advice.  *See Hinton*, 571 U.S. at 274 ("[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.").  Counsel testified to his understanding of the plea deal at the evidentiary hearing, and the district court determined his understanding of Rule 11(c)(1)(C) agreements was incomplete or imprecise.  Specifically, counsel "regularly advised his clients that they would have to admit the facts surrounding the offense . . . because he believed the law required it," "testified that he wasn't aware of any enforcement mechanisms

10

to ensure the court actually sentenced the defendant to the term of imprisonment from the plea offer," and "didn't know if Mr. Kearn would actually receive a 10-year sentence if he pleaded guilty." App. Vol. II, 456-57.

Given these misunderstandings, and the intimate circumstances of Mr. Kearn's crimes, the district court found only spending six minutes to explain the plea deal also contributed to its finding of deficient performance. The government argues, however, that counsel was not required to spend more time discussing the plea because Mr. Kearn refused to plead guilty. The government frames this as a strategic choice—that time was better served focusing on trial strategy after Mr. Kearn made clear he would not plead guilty. There are two problems with this argument. First, when asked at the evidentiary hearing if counsel believed Mr. Kearn would plead guilty, counsel admitted he was not sure Mr. Kearn would proceed to trial until right before trial. *Id.* at 340–41 ("After we had the hearing right before we started our trial . . . from then on I was confident he was not going to enter a guilty plea."). Because he was not convinced Mr. Kearn would proceed to trial even after their discussion about the plea agreement, counsel's decision to only discuss the plea offer for six minutes—and never mention it again—can hardly be considered strategic. And it is certainly not a strategic choice to provide incomplete or inaccurate advice.

Second, counsel also had an obligation to effectively assist Mr. Kearn in deciding whether to plead guilty. *See Padilla*, 559 U.S. at 364 (internal quotation marks omitted) ("Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel."); *United States v. Washington*, 619 F.3d 1252,

11

1259 (10th Cir. 2010) (defendants have "the right to make a reasonably informed decision whether to accept a plea offer"). And "[a]lthough a defendant's proclamation of innocence . . . may affect the advice counsel gives[,]" it "does not relieve counsel of his normal responsibilities under *Strickland*." *Burt v. Titlow*, 571 U.S. 12, 22 (2013). As Mr. Bell explained at the evidentiary hearing, it is common for defendants to maintain their innocence when charged with sensitive crimes, like child abuse cases. But it is the job of the attorney to adequately explain the plea and to help lower that "psychological hurdle." App. Vol. II, 458.

In any case, Mr. Kearn's "choice to forgo a plea was no choice at all, being grounded on faulty counsel and therefore immaterial." *Byrd v. Skipper*, 940 F.3d 248, 259 (6th Cir. 2019) (internal quotation marks omitted). His consideration and ultimate decision regarding the government's plea offer was based on faulty advice. He decided to proceed to trial because counsel failed to adequately explain the benefits of accepting it and incorrectly told him he would have to supply the factual basis himself rather than an alternative method.

In sum, the district court did not err in finding that counsel's representation of the plea bargain, when viewed in the aggregate, fell below an objective standard of reasonableness.

### C. Prejudice

The government also contends the district court erred in finding prejudice flowing from counsel's ineffective assistance. Again, it argues Mr. Kearn has not shown he would have accepted a plea agreement if adequately counseled prior to

12

trial. The district court disagreed, pointing to (1) evidence showing Mr. Kearn was amenable to accepting a guilty plea so long as he did not have to set forth the facts of his offense in open court, and (2) the significant disparity between the plea offer and Mr. Kearn's sentencing exposure if convicted as contemporaneous evidence supporting his claim he would have pleaded guilty if properly advised.

We see no flaw in the court's reasoning.

To show prejudice, a defendant must show "there is a reasonable probability that, but for counsel's errors, he would [] have pleaded guilty." *See United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The likelihood a defendant would have accepted a guilty plea must be "'substantial,' not just 'conceivable.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011)). "[I]t does not require that the [defendant] show that counsel's deficient conduct more likely than not altered the outcome in the case . . . [but] mere speculation is not sufficient to satisfy this burden." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (internal quotation marks omitted).

In summary, in the plea bargain context, a defendant must show that:

> [1] [the] defendant would have accepted the plea . . . [2] the prosecution would not have withdrawn it in light of intervening circumstances . . . [3] the court would have accepted its terms, and . . . [4] the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

13

*Lafler*, 566 U.S. at 164; *see also Smith v. Allbaugh*, 921 F.3d 1261, 1271 (10th Cir. 2019) (same).

The government does not dispute Mr. Kearn's ability to satisfy the second and fourth requirements, and the district court acknowledged it would have accepted his plea if offered. Accordingly, only the first requirement is disputed on appeal. We agree with the district court there is a reasonable probability Mr. Kearn would have pleaded guilty if properly advised and that he was therefore substantially prejudiced by counsel's deficient performance.

These types of cases inevitably require a backward-looking counterfactual assessment of what the world would have been absent ineffective assistance. Complicating this inquiry is the defendant's after-the-fact knowledge that he would have been significantly better off if he had taken the plea bargain. In addressing this evidentiary dilemma, courts should "remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors[.]" *Heard*, 728 F.3d at 1184; *and see Watson*, 766 F.3d at 1226 (explaining that defendants need something more than a "self-serving statement" to make the case for prejudice). The "failure to point to any evidence in support of prejudice provides a sufficient basis, standing alone, to reject [an] ineffective-assistance claim." *Watson*, 766 F.3d at 1227. Thus, courts are required to locate from the plea bargain process "contemporaneous evidence to substantiate a defendant's expressed preferences." *Dominguez*, 998 F.3d at 1112 (citations omitted). !

14

The Supreme Court has given some guidance to courts in evaluating ineffective assistance claims involving plea bargaining. The most recent is *Lee v. United States*, 582 U.S. 357 (2017). In that case, the defendant claimed he would not have pleaded guilty to aggravated felony charges if he had been properly informed it would lead to his deportation. *Id.* at 361. A magistrate judge accepted testimony that "deportation was the determinative issue in Lee's decision whether to accept the plea," that his attorney "assured him [] [] deportation was not in the plea agreement," and that his attorney would have advised Lee to go to trial if he had known Lee would be deported upon pleading guilty. *Id.* at 362. But the district court denied relief, and the Sixth Circuit affirmed the denial.

To evaluate this claim, the Supreme Court looked for contemporaneous evidence from the plea bargain process to bolster the defendant's testimony. *Id.* at 369. It looked back at the time the plea was offered for conduct or statements made by Lee to support his "post hoc" claim he would not have accepted the plea deal if he knew it would lead to his deportation. The Court found Lee asked his attorney "repeatedly" if accepting the plea would put him at risk of deportation, and found that, during his plea colloquy, the judge warned of deportation and Lee turned to his attorney for advice. *Id.* Only after his attorney "assured him that the judge's statement was a standard warning was Lee willing to proceed to plead guilty." *Id.* Thus, the Court found "no reason to doubt the paramount importance Lee placed on avoiding deportation," *id.* at 370, and determined there was a reasonable probability that, but for his attorney's deficient assistance, he would not have pleaded guilty, *id.* at 371.

15

With these cases in mind, we turn to the district court's finding of prejudice. In the evidentiary hearing, Mr. Kearn testified that if he had known the government could supply the factual basis for the plea, he would have pleaded guilty. The district court determined his "main sticking point . . . [was] his unwillingness to admit the facts of his charged offense in open court." App. Vol. II, 481. The court found that with the correct understanding that the government could supply the factual basis for the guilty plea, Mr. Kearn's decision-making process would have likely been altered.

The government, however, contends that even though it could have supplied the factual basis, Mr. Kearn never would admit his legal and factual guilt to enter a guilty plea. It says this is so because he told his counsel "he would not plead guilty" because "he didn't do it—didn't do what he was charged with." *Id.* at 454.

The district court rejected this argument. It found that although Mr. Kearn testified he could not say he "knowingly committed the crime and was, in fact, guilty of it . . . he could have acknowledged the government had evidence to convict him at trial, and that after making that statement he would have been willing to plead guilty." *Id.* at 482 (internal quotation marks omitted). In other words, Mr. Kearn was open to admitting he knowingly committed the offense and was guilty of it *only after* the government supplied the factual basis.[2] And when Mr. Kearn was reoffered the

---

[2] The district court correctly juxtaposed (1) admitting the factual basis of the crime for which the defendant is pleading guilty to, and (2) admitting guilt. It explained "[t]he guilty plea is an independent act with its own legal consequences separate and apart from the factual basis for the guilty plea," and emphasized that "[n]o matter

16

plea deal, he did in fact plead guilty after the government supplied the factual basis. The district court found Mr. Kearn's testimony that he would have pleaded guilty, so long as he did not have to supply the factual basis for his plea, credible. And we "especially defer to a district court's findings on witness credibility." *United States v. Jordan*, 806 F.3d 1244, 1252 (10th Cir. 2015) (internal quotation marks omitted). The testimony was further bolstered by Mr. Bell's evaluation of how a properly-counseled discussion of the plea agreement should work in these circumstances.

The district court viewed counsel's testimony that he was only certain Mr. Kearn was not going to enter a guilty plea until right before the trial started as contemporaneous evidence Mr. Kearn was amenable to pleading guilty. App. Vol II, 480-81. The district court found, but did not categorize, two more facts as contemporaneous evidence that Mr. Kearn would have accepted the plea deal. First, Mr. Kearn discussed the government's proposed plea with counsel, rather than flatly refusing to entertain the topic. *See Byrd*, 940 F.3d at 258–59 (finding evidence defendant was amenable to pleading guilty because he asked his attorney about the possibility of pleading). Second, toward the end of their short consultation, counsel told Mr. Kearn it was "too bad there's not a no contest plea." App. Vol. II, 454. This statement reflects Mr. Kearn's fears about what a plea deal would require of him, but that he was at least amenable to accepting a different formulation.

---

who supplies the factual basis for the plea and no matter how they supply it, a defendant, to plead guilty, still must enter a guilty plea." App. Vol. II, 512.

The government again points to Mr. Kearn's statements about refusing to plead guilty as driving the opposite conclusion—that he was not amenable to pleading guilty. But Mr. Kearn "lacked the requisite information to weigh the options in front of him, and whatever desire he exhibited before trial is not dispositive of what he would have done if he were properly educated about the charges against him." *Byrd*, 940 F.3d at 258. And as the district court noted, we cannot "rationally expect defendants to theorize contemporaneously about the decisions they would make if they were receiving different advice. If courts required this kind of evidence, no defendant could show prejudice." App. Vol. II, 476. Thus, Mr. Kearn's "interest in proceeding to trial was rooted in misinformation gleaned from his counsel's faulty advice, making it an unreliable metric of reasonably probable outcomes." *Byrd*, 940 F.3d at 258. !

Finally, the district court pointed out the significant disparity between the plea bargain—10 years—his exposure—30 years—and his actual sentence—24 years. The government contends sentencing disparity is irrelevant because it would not have made a difference in Mr. Kearn's willingness to plead guilty since he was dead set against doing so.

But the disparity is relevant in this case. Mr. Kearn was not adequately informed that the district court would have been bound by the agreed-upon sentence. Thus, counsel improperly skewed Mr. Kearn's attention away from the sizeable sentencing disparity he faced in favor of the need for him to personally supply a factual basis. We have previously explained our assessment of the prejudice prong

18

depends on objective factors such as "the length of the sentence he faced under the terms of the plea deal, the prospect of minimizing exposure to other charged counts, and so on." *Heard*, 728 F.3d at 1183. And sentencing disparity is "strong evidence of a reasonable probability that a properly advised defendant would have accepted a plea offer, despite earlier protestations of innocence." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).[3]

Mr. Kearn's plea offered a 10-year sentence in exchange for a guilty plea on one count, and by going to trial Mr. Kearn risked sentencing exposure of more than 30 years in prison. Because the plea was very favorable, and there was overwhelming evidence of guilt,[4] this fact weighs in favor of the district court's finding of prejudice.

\* \* \*

In sum, the district court did not err in finding that Mr. Kearn met the *Strickland* elements of deficient performance and prejudice.

### III. Conclusion

We affirm the district court's grant of habeas relief on Mr. Kearn's ineffective assistance of counsel claim.

---

[3] Similarly, in *United States v. Knight*, 981 F.3d 1095, 1102-1107 (D.C. Cir. 2020), the D.C. Court of Appeals, in examining the prejudice prong in a plea bargain case, looked at (1) the disparity in sentencing exposure between accepting the plea offer and going to trial, and (2) evidence showing the defendant was amenable to accepting the plea offer.

[4] In a prior appeal, we found the "evidence of Kearn's guilt [] overwhelming." *United States v. Kearn*, 863 F.3d 1299, 1312 (10th Cir. 2017).