**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
United States Court of Appeals
Tenth Circuit

**September 4, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICHARD JENKS, JR.,

    Defendant - Appellant.

No. 23-4146
(D.C. Nos. 2:19-CV-00094-CW &
2:15-CR-00072-CW-1)
(D. Utah)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HOLMES**, Chief Judge, **HARTZ**, and **ROSSMAN**, Circuit Judges.
_____

Richard Jenks Jr. seeks a certificate of appealability (COA) to challenge the

district court's denial of his motion to vacate, set aside or correct his sentence under 28

U.S.C. § 2255.  We deny a COA.

**I.**

Mr. Jenks was indicted for sexually abusing his minor stepdaughter.  He

maintained his innocence and proceeded to trial.  He was convicted of aggravated sexual

abuse of a child within Indian Country, 18 U.S.C. §§ 1153(a), 2241(c), and sexual abuse

of a minor within Indian Country, 18 U.S.C. §§ 1153(a), 2243(a).  He was sentenced to

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

30 years' imprisonment, the mandatory minimum sentence. We affirmed. *United States v. Jenks*, 714 Fed. App'x 894, 896, 900 (10th Cir. 2017).[1]

Mr. Jenks filed a motion for relief under 28 U.S.C. § 2255, arguing his trial counsel had been unconstitutionally ineffective in multiple ways. The district court denied his motion in full, but we previously vacated that decision in part and remanded for an evidentiary hearing on Mr. Jenks's claim that his trial counsel had not provided effective assistance during plea negotiations. *United States v. Jenks*, No. 20-4023, 2022 WL 1252366, at *1, *5 (10th Cir. Apr. 28, 2022).

On remand, after an evidentiary hearing, the district court again rejected Mr. Jenks's claim. From the evidence, it determined that although the government had discussed the possibility of 10-year or 8-year plea deals with Mr. Jenks's counsel, "[d]iscussions about a plea deal . . . never went beyond the government's initial inquiries because Mr. Jenks insisted that he wanted to proceed to trial." Aplt. App., vol. I at 68.

The district court concluded his counsel had not provided objectively inadequate assistance. Among other reasoning, it explained that although Mr. Jenks alleged his counsel had wrongly advised him that the government's DNA evidence was weak, his testimony on this point was "vague and conclusory." *Id.* at 75. It concluded he had not overcome the presumption of reasonable performance by counsel.

The district court also found Mr. Jenks had not shown he was prejudiced by the allegedly ineffective assistance, for three separate reasons. First, he had not shown the

---

[1] We vacated and remanded with respect to imposition of occupational restrictions. *Jenks*, 714 Fed. App'x at 900. That has no bearing on Mr. Jenks's § 2255 motion.

2

government extended a plea offer he could have accepted. Second, "Mr. Jenks would not have entered a plea agreement . . . even if he had all the information he claims he was not provided." *Id.* at 91. Third, the court would not have accepted a plea agreement that limited the sentence to eight or ten years:

> The court can say with confidence . . . that given the egregiousness of Mr. Jenks's conduct, which included the repeated oral, vaginal, and anal rape by Mr. Jenks of his minor stepdaughter over the course of five years, it would not have accepted any plea agreement that required the court to sentence Mr. Jenks to fifteen years or less in prison. Such a sentence would be far too lenient for the serious crimes committed by Mr. Jenks and would not be in the public interest.

*Id.* at 97. The district court therefore rejected his claim, and it denied a COA.

## II.

Mr. Jenks requests a COA, which is a jurisdictional prerequisite for him to appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, he must make "a substantial showing of the denial of a constitutional right." § 2253(c)(2). This requires him to show "that reasonable jurists could debate whether (or, for that matter, agree that) [the § 2255 motion] should have been resolved in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## III.

Defendants are "entitled to the effective assistance of competent counsel" during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (internal quotation marks omitted). In particular, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 168.

Under *Strickland v. Washington,* 466 U.S. 668 (1984), Mr. Jenks must show both that his counsel's performance was deficient, and also that he was prejudiced by the deficient performance. *United States v. Kearn*, 90 F.4th 1301, 1305–06 (10th Cir. 2024).

The district court found Mr. Jenks had not made either *Strickland* showing. But we resolve his COA application based only on the lack of prejudice. To show prejudice in the context of plea negotiations, a defendant "must show the outcome of the plea process would have been different with competent advice." *Id.* at 1306 (internal quotation marks omitted). Because Mr. Jenks's claim is that his lawyers' deficient performance led him to reject plea offers and proceed to trial, he must show that "but for the ineffective advice of counsel there is a reasonable probability":

> [1] that the plea offer would have been presented to the court (*i.e.*, *that the defendant would have accepted the plea* and [2] [that] the prosecution would not have withdrawn it in light of intervening circumstances), [3] that the court would have accepted its terms, and [4] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164 (emphasis added); *Kearn*, 90 F.4th at 1309.

The district court found Mr. Jenks had not shown that (1) there was a plea offer he could accept, (2) he would have accepted it, or (3) the court would have approved it. Each of these findings, if correct, would be independently fatal to Mr. Jenks's § 2255 motion. We address only the second one.

To prevail, Mr. Jenks must "prove with evidence that there is a reasonable probability that . . . he would have accepted the plea agreement" if he had received effective assistance of counsel. *United States v. Watson*, 766 F.3d 1219, 1226–27

4

(10th Cir. 2014). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Kearn*, 90 F.4th at 1309 (internal quotation marks omitted). "The likelihood a defendant would have accepted a guilty plea must be substantial, not just conceivable." *Id.* (internal quotation marks omitted).

The prejudice inquiry is "largely objective." *Id.* at 1306. Thus, "[a] defendant's 'mere allegation' that he would have pleaded guilty but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *Id.* (internal quotation marks omitted). "We instead look for contemporaneous evidence, i.e., the factual circumstances surrounding the plea, to determine if there is a reasonable probability the defendant would have accepted the plea deal." *Id.*

The district court found Mr. Jenks had not met his burden because he relied almost exclusively on his own "'*post hoc* assertions . . . about how he would have pleaded but for his attorney's deficiencies.'" Aplt. App., vol. I at 91 (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)). It concluded there was not contemporaneous evidence showing he likely would have agreed to a plea offer before trial. To the contrary, it found "the evidence in the record suggests the opposite—that Mr. Jenks was dead-set on going to trial and communicated that preference to his counsel repeatedly." *Id.* at 94. In reaching this finding, it relied on evidence reflecting the circumstances at the time Mr. Jenks chose not to pursue plea negotiations. This included: his own acknowledgement that he never told his attorneys he would be willing to plead guilty, *id.* at 94, 122, 124, 135–36; his lawyer's testimony that Mr. Jenks insisted he would not accept a plea deal because he was innocent, *id.* at 94, 190, 192; his lawyer's testimony

that although the government invited plea negotiations, they "never got to the details, because . . . Mr. Jenks never wanted to accept an offer," *id.* at 200; and the prosecutor's testimony that defense counsel had informed him Mr. Jenks was not interested in a plea agreement and wanted to go to trial, *id.* at 94, 225.

We conclude the district court's ruling on this necessary element of Mr. Jenks's claim was not reasonably debatable. Mr. Jenks mostly relies on his own post hoc or self-serving statements. Those are insufficient to carry his burden. *Kearn*, 90 F.4th at 1306; *Watson*, 766 F.3d at 1226. No contemporaneous evidence shows a substantial probability that he would have accepted a plea offer, or undermines the district court's finding that he "would not have entered a plea agreement . . . even if he had all the information he now claims he was not provided by his counsel." Aplt. App., vol. I at 91.

Mr. Jenks argues the disparity between the 30-year mandatory minimum sentence he faced at trial and the 8- or 10-year sentence potentially available in a plea agreement shows he would likely have pled guilty if competently advised. Such disparities can provide "strong evidence of a reasonable probability that a properly advised defendant would have accepted a plea offer, despite earlier protestations of innocence." *Kearn*, 90 F.4th at 1312 (internal quotation marks omitted). But the *Strickland* prejudice inquiry requires "a case-by-case examination of the totality of the evidence." *Lee*, 582 U.S. at 367 (internal quotation marks omitted). We agree with the district court that the disparate sentences have little probative weight here, because Mr. Jenks knew of the disparity but still affirmatively chose not to pursue plea negotiations. The district court found he "had at least a general understanding of the sentencing disparity," because his lawyers had

informed him of the government's invitations to negotiate for 8- and 10-year sentences, and also told him that "he would die in prison" if convicted. *Id.* at 95, 175. Given this record, the mere fact that a possible plea agreement might have provided a much shorter sentence does little to undercut the evidence showing Mr. Jenks made the decision to proceed to trial rather than to pursue negotiations.

Mr. Jenks's COA application argues he is entitled to relief based on *Kearn* and *United States v. Knight*, 981 F.3d 1095, 1102 (D.C. Cir. 2020). But the facts of those cases are quite different from the alleged ineffectiveness here.

In both *Kearn* and *Knight*, the lawyers were constitutionally ineffective because they gave their clients inaccurate information about plea agreements, which led the defendants to reject them. Both defendants then received harsher sentences than they would have under the proposed plea agreements. In *Knight*, the lawyer prejudiced the defendant by giving him misinformation about both how short a sentence he would serve if he accepted the plea offer and also how long a sentence he would face if he went to trial. *See* 981 F.3d at 1100. In *Kearn*, the lawyer similarly gave his client "inaccurate and misleading information" about the plea agreement, 90 F.4th at 1304, which "understated the benefits and overstated the burdens of the plea offer." *Id.* at 1308. Nothing similar occurred here. The allegedly ineffective assistance by Mr. Jenks's counsel was not related to advising him about the terms of a potential plea agreement. And he was not misled about the length of sentence the government suggested he could negotiate, or about the fact that conviction would be tantamount to a life sentence.

7

Although *Knight* and *Kearn* found prejudice in the circumstances they addressed, they do not show the district court's resolution was reasonably debatable here.

Mr. Jenks argues that the fact he maintained his innocence cannot be the "sole basis" for finding a lack of prejudice. Aplt. Br. at 37. But this was not the sole basis of the district court's finding, which rested on the testimony of Mr. Jenks, his lawyer, and the prosecutor, and on other evidence.

He argues that because he professed contrition and a willingness to "take . . . responsibility" and "deal with the consequences" of his actions at sentencing, he would have been willing to plead guilty. *See* Aplt. Br. at 38; Aplt. App., vol. IV at 988. Such vague post-conviction statements do not show he would have accepted a plea offer before trial.

Finally, Mr. Jenks argues that the strength of the prosecution's evidence—specifically, that his DNA was conclusively found on a condom along with the victim's DNA—shows his counsel's error was "egregious," and that he probably would have accepted a plea offer if he had been advised how impactful the DNA evidence would be. Aplt. Br. at 37. But even assuming his counsel performed egregiously, Mr. Jenks has the burden to show he was prejudiced as a result. After hearing his testimony, the district court found he had not met that burden, because the evidence showed he was "dead-set on going to trial" and did not indicate a willingness to plead guilty, even after he heard the DNA evidence presented against him at trial. Aplt. App., vol. I at 94; *id.* at 91. These findings rest largely on its credibility assessments, and we "especially defer to a district court's findings on witness credibility." *Kearn*, 90 F.4th at 1311 (internal quotation

8

marks omitted).  Even assuming his counsel's performance was deficient, Mr. Jenks's arguments do "no more than open the door to conjecture," so they do not carry his burden.  *See Watson*, 766 F.3d at 1226.  At most, it is *conceivable* he would have accepted a plea agreement; but reasonable jurists would not debate the district court's conclusion that he has not shown a *substantial* probability that he would have done so.  *See Kearn*, 90 F.4th at 1309.  Because he cannot obtain § 2255 relief without making that showing, we need not reach the other elements he would need to establish to prevail, or the other grounds on which the district court relied.

### IV.

We deny a certificate of appealability and dismiss this matter.

Entered for the Court

Jerome A. Holmes
Chief Judge