FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 17, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

VICENCIO OLEA-MONAREZ,

    Defendant - Appellant.

No. 23-3249
(D.C. Nos. 2:19-CV-02491-JAR,
2:20-CV-02051-JAR-JPO &
2:14-CR-20096-JAR-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Vicencio Olea-Monarez is a federal prisoner who is represented by counsel.
He moved for a certificate of appealability (COA) so he could challenge the district
court's denial of his 28 U.S.C. § 2255 motion. We granted that motion as to one of
his claims, specifically, a claim for ineffective assistance of counsel at the plea-
bargaining phase. We reserved ruling as to the remainder of the motion.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

As to the ineffective-assistance claim, the government now concedes error. Exercising our independent judgment, we agree with the government that the district court erred. We therefore reverse and remand with instructions. As to the remainder of the COA motion, we deny a COA.

## I.    BACKGROUND & PROCEDURAL HISTORY

### A.    Plea Bargaining, Trial, Conviction, and Sentence

In October 2014, a grand jury indicted ten defendants, including Olea-Monarez, as part of a large drug-distribution conspiracy in the Kansas City area. The indictment alleged twenty counts against Olea-Monarez, including conspiracy, distributing methamphetamine, and possessing a firearm in furtherance of a drug-trafficking crime. An appointed attorney, Michael R. Clarke, represented him.

In March 2016, one month before trial, the government offered Olea-Monarez a plea deal under which he would plead guilty to two counts of the indictment, and, in exchange, the government would stipulate to a 25-year sentence per Federal Rule of Criminal Procedure 11(c)(1)(C). Olea-Monarez rejected the offer, in contrast to his co-defendants, all of whom took a plea deal or simply pleaded guilty.

At trial, Olea-Monarez presented a duress defense. More specifically, he testified on his own behalf that he dealt drugs because his brother (who passed away from cancer) had dealt drugs and left a drug debt to Mexican cartels. Olea-Monarez told the jury that he feared the cartels would hurt or kill him or his family if he did not settle the debt. He also testified that he did not seek help from the police because he did not believe they would be willing or able to protect him. *Cf. United States v.*

*Beckstrom*, 647 F.3d 1012, 1016–17 (10th Cir. 2011) (listing "no reasonable opportunity to escape the threatened harm" as one of the elements of a duress defense; further stating that "[t]he ability to contact law enforcement will generally constitute a reasonable alternative to illegal activity" but "[a] defendant may pursue a duress defense by showing that the alternative of contacting law enforcement was illusory or futile" (internal quotation marks omitted)).  Olea-Monarez presented no evidence beyond his own testimony.  The jury found him guilty on all charges.

Between trial and sentencing, Olea-Monarez himself sent a letter to the district court insisting that he dealt drugs only because he feared what the cartels would do to him and his family if he refused.  Olea-Monarez also had a pre-sentencing meeting with Clarke (his attorney) in which he continued to insist on his duress story.

The extensive nature of the crimes meant that Olea-Monarez's guidelines range for some of his convictions amounted to life imprisonment, despite a criminal history score of zero.  The district court sentenced him to life in prison on certain charges, and, consecutive to that, an aggregate of thirty years on other charges.[1]  In comparison, the longest sentence received by any of his co-defendants who took a plea deal was fifteen years, and the one defendant who pleaded guilty without a plea deal received a little less than twenty years.

---

[1] In December 2024, the district court partially granted a compassionate release motion and re-sentenced Olea-Monarez to life plus ten years (instead of thirty).  This has no effect on the issues presented here.

**B.      Section 2255 Proceedings**

Following an unsuccessful appeal on issues unrelated to those presented here, the Federal Public Defender for the District of Kansas entered an appearance on Olea-Monarez's behalf and filed a § 2255 motion.  That motion asserted two claims:

1.      structural error based on the government's intrusion into the attorney-client relationship, namely, the government's alleged viewing of soundless videos of Olea-Monarez's meetings with his Clarke during pretrial detention; and

2.      ineffective assistance of counsel based on Clarke's allegedly inadequate advice at the plea-bargaining phase.

The district court denied relief as to both claims and denied a COA.  Olea-Monarez noticed this appeal and moved for a COA from this court.  The court granted a COA as to the ineffective-assistance claim and reserved ruling on the structural-error claim.

A few months after the court granted a COA on the ineffective-assistance claim, Olea-Monarez filed a "Joint Motion to Reverse and Remand" (Joint Motion). ECF No. 63 at 1.  The Joint Motion states that Olea-Monarez and the government wish this court to: (i) reverse the district court's denial of Olea-Monarez's § 2255 ineffective-assistance claim; (ii) order the government to re-offer the 25-year plea deal under Rule 11(c)(1)(C); and (iii) remand to the district court for further proceedings.  "The government now concedes that Clarke provided ineffective assistance of counsel at the plea-bargaining stage of the prosecution . . . ."  *Id.* at 4.

4

## II.    CLAIM 1 (STRUCTURAL ERROR)

Before addressing the Joint Motion, we will dispose of the remainder of the COA motion, *i.e.*, Claim 1, asserting structural error based on the government's alleged viewing of soundless videos of Olea-Monarez's meetings with Clarke during pretrial detention.  To merit a COA, Olea-Monarez must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means he "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The district court denied relief as to Claim 1 because Olea-Monarez nowhere asserted that the government's alleged intrusion into the attorney-client relationship caused him prejudice.  This ruling is consistent with our recent holding that "a Sixth Amendment violation of the right to confidential communication with an attorney requires the defendant to show prejudice," *United States v. Hohn*, 123 F.4th 1084, 1088 (10th Cir. 2024) (en banc).  Therefore, reasonable jurists could not debate the outcome of Claim 1, and it does not merit a COA.[2]

## III.    CLAIM 2 (INEFFECTIVE ASSISTANCE)

Claim 2 asserts Clarke provided ineffective assistance at the plea-bargaining phase.  Ineffective assistance of counsel means: (1) constitutionally deficient performance by the attorney that (2) prejudices the defendant.  *Strickland v.*

---

[2] Olea-Monarez concedes that this court's precedent forecloses Claim 1, and he asserts it merely to preserve the issue for potential Supreme Court review.

*Washington*, 466 U.S. 668, 687 (1984). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.* As part of this prejudice analysis, the defendant must establish "a reasonable probability . . . that [he] would have accepted the plea" if he had received competent advice. *Id.* at 164.

As described above, Olea-Monarez received a 25-year plea offer under Rule 11(c)(1)(C). In his § 2255 motion, he explained that he rejected the offer based on what he alleged to be Clarke's faulty advice. According to Olea-Monarez, Clarke knew the evidence against Olea-Monarez was strong and Olea-Monarez could not present a viable duress defense, but Clarke nonetheless encouraged him to go to trial on that defense. Olea-Monarez claimed that, but for being wrongly advised about the viability of the duress defense, he would have accepted the plea offer. And Olea-Monarez attached a declaration from Clarke asserting:

- "I spoke with Mr. Olea-Monarez about the government's offer and did not encourage him to take the deal. My typical approach is to take a case to trial unless the government is willing to offer less than 20 years." R. vol. I at 3318, ¶ 4.

- "It was my idea to pursue a duress defense. I chose that option because it was consistent with the story that Mr. Olea-Monarez was telling me. . . . I believed Mr. Olea-Monarez when he said he did not go to the police because he believed they would be unwilling or unable to protect his family in Mexico." *Id.* ¶¶ 5–6, 8.

6

- "I researched duress law and knew Mr. Olea-Monarez would have to present more than his subjective belief that police would be unwilling or unable to protect him in order to satisfy the . . . element of the duress defense [regarding lack of a reasonable opportunity to escape the harm]." *Id.* ¶ 9.

- "I performed research to try to find . . . objective evidence. In the course of that research, I located news stories about the dangerousness of the Mexican cartel, state department information, and travel advisories. I do not remember whether I offered this information into evidence at trial or sentencing." *Id.* at 3319, ¶¶ 10–11.

The government responded to this claim by defending the adequacy of Clarke's representation (*i.e.*, the first *Strickland* inquiry). Much of that argument was focused on establishing that Clarke did not push Olea-Monarez to go to trial, but Olea-Monarez made that decision himself. From the government's perspective, this was shown by evidence suggesting Olea-Monarez truly believed he acted under duress, such as Olea-Monarez's posttrial letter to the district court. Although the government never straightforwardly said so, the gist of its argument was that Olea-Monarez was determined to go to trial no matter what. But the government specifically stated it was not addressing prejudice (the second *Strickland* inquiry), although prejudice is where a court would normally ask if the defendant would have gone to trial regardless, *see Lafler*, 566 U.S. at 168.

The district court granted an evidentiary hearing on this claim. Only Clarke testified at that hearing, not Olea-Monarez. For present purposes, the key points from Clarke's testimony were as follows:

- Clarke reaffirmed the statements in his declaration, except for the statement about a policy of taking cases to trial unless the government offers less than twenty years. As to that, he said he has no bright-line

7

rule, he simply believes defendants have a difficult time grasping the idea of a twenty-plus-years sentence. He acknowledged, however, that he never asked Olea-Monarez's current attorneys (who drafted the declaration) to revise or rephrase this statement.

- Clarke told Olea-Monarez he was facing a possible life sentence.

- Clarke did not encourage Olea-Monarez to take the 25-year offer, nor discourage him from taking that offer, because he leaves to his client the decision whether to take a plea offer.

- Clarke believed a duress defense was the only thing he could assert "for Mr. Olea-Monarez to have a chance at acquittal." R. vol. III at 120.

- Clarke denied advising Olea-Monarez that he had a strong duress defense or that the jury was likely to acquit. Rather, Olea-Monarez himself believed strongly in his duress defense, and Olea-Monarez was generally not interested in any of the government's plea offers.

Weighing all the evidence, the district court concluded Clarke had provided objectively unreasonable advice. The key passage from the district court's order is the following:

> Clarke communicated the advantages of the 25-year plea offer to Petitioner, who understood the terms of the agreement. It was Petitioner, not Clarke, who made the decision to reject the government's offer. Clarke testified that he did not need to convince Petitioner not to take the plea deal because Petitioner consistently and repeatedly informed him that he was not interested in any of the government's offers. Nor does the evidence support Petitioner's claim that Clarke informed him that he had a strong duress defense and essentially pushed him to proceed to trial on that basis. In fact, Petitioner continued to assert after the verdict that he was subject to duress, as evidenced by the letter he sent to the Court after trial. . . .
>
> Although the government does not dispute Petitioner's ability to satisfy the prejudice prong of his claim, failure to prove the performance prong is dispositive. Petitioner's claim is denied on this ground.

8

R. vol. I at 3215.

The government now joins Olea-Monarez in asserting that the district court reached the wrong outcome. This is so, they say, because "the district court denied the claim based on its finding that Mr. Olea-Monarez personally made the decision to reject the 25-year offer," instead of "considering whether Clarke provided competent advice to Mr. Olea-Monarez about the benefits and risks of accepting the plea offer versus proceeding to trial with a legally insufficient duress defense." Joint Motion at 6; *cf. United States v. Kearn*, 90 F.4th 1301, 1308 (10th Cir. 2024) (rejecting a narrow focus on the defendant's decision to turn down a plea offer because "counsel [has] an obligation to effectively assist [the defendant] in deciding whether to plead guilty").

The government's concession of error "is entitled to great weight," but "the proper administration of the criminal law cannot be left merely to the stipulation of parties." *Young v. United States*, 315 U.S. 257, 258–59 (1942). Thus, "parties cannot compel us to reverse (or modify) a district court's determination by stipulation. Reversal of a district court's order requires our examination of the merits of the case, thereby invoking our judicial function." *United States v. Furman*, 112 F.3d 435, 438 n.2 (10th Cir. 1997) (internal quotation marks omitted).

We therefore must examine the ineffective-assistance issue for ourselves. "In reviewing denial of a § 2255 motion for post-conviction relief where a COA has been granted, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir.

2012) (internal quotation marks omitted). We ultimately agree with the parties' stipulation of error, for two reasons.

First, if the district court meant to say Olea-Monarez would have gone to trial no matter what advice he received from Clarke, the district court was ruling on *Strickland*'s prejudice prong—which, in this context, asks if the defendant likely would have taken the plea offer but for bad advice, *see Lafler*, 566 U.S. at 164. Yet the government told the district court it was not making a lack-of-prejudice argument, and it continues to disavow any argument under the prejudice prong, *see* Joint Motion at 9 ("Prejudice has never been disputed in this case.").

Second, Olea-Monarez's choice to go to trial is only relevant if he received adequate advice from counsel about the advantages and disadvantages of taking or rejecting a plea offer. Olea-Monarez argued in his § 2255 motion,

> Mr. Clarke knew or should have known[] [that]
> Mr. Olea-Monarez would be required to provide evidence
> of specific reasons to justify his failure to contact police.
> And Mr. Clarke knew or should have known that
> Mr. Olea-Monarez would be unable to present such
> evidence. Thus, Mr. Clarke knew or should have known—
> and therefore should have advised Mr. Olea-Monarez—that
> neither the law nor the facts supported a duress defense
> and that such a defense wasn't a viable option.

R. vol. I at 3187 (footnotes and internal quotation marks omitted). Clarke's declaration, attached to that same motion, supports this argument. Clarke said, "I researched duress law and knew Mr. Olea-Monarez would have to present more than his subjective belief that police would be unwilling or unable to protect him in order to satisfy the . . . element of the duress defense [regarding lack of a reasonable

opportunity to escape the harm]." R. vol. I at 3318, ¶ 9. And Clarke's hearing testimony was consistent with his declaration on this point.

The timeline here is ambiguous because Clarke never specified if he learned *before* or *after* Olea-Monarez rejected the plea offer that the duress defense would require more than just Olea-Monarez's testimony about his subjective beliefs. But the ambiguity makes no difference because either scenario would show ineffective assistance under these circumstances. In Clarke's own words, "It was my idea to pursue a duress defense." R. vol. I at 3318, ¶ 5. He further agreed that he "needed to rely on the duress defense in order for Mr. Olea-Monarez to have a chance at acquittal." R. vol. III at 120. In this light, if Clarke knew *before* Olea-Monarez rejected the plea offer that Olea-Monarez would need more than his own subjective beliefs to prove the duress defense and Clarke had no plan for how to provide the necessary additional evidence—and nothing in the record suggests he had such a plan—then Olea-Monarez made his decision to reject the plea offer while lacking a key piece of information, namely, his attorney had no plan for adequately supporting the duress defense. Or, if Clarke found out *after* Olea-Monarez rejected the plea offer that Olea-Monarez would need to present more than his subjective belief, then Olea-Monarez likewise made his decision to reject the plea offer while lacking a key piece of information, namely, his attorney did not know if Olea-Monarez could present a viable duress defense.

For these reasons, Olea-Monarez's "consideration and ultimate decision regarding the government's plea offer was based on faulty advice." *Kearn*, 90 F.4th

at 1309. In these circumstances, that faulty advice was constitutionally ineffective. *Cf. Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) ("We do not believe Toro received competent assistance. At the time counsel advised Toro to proceed to trial, his investigation should have indicated to him that the evidence against Toro was very strong. There were few, if any, viable defenses."). And, given the government has never contested *Strickland*'s prejudice prong, Olea-Monarez has carried his burden to show ineffective assistance of counsel.

In these circumstances, the Supreme Court has discussed two potential remedies. First, "the [trial] court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Lafler*, 566 U.S. at 171. This remedy is usually appropriate if "the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial." *Id.* Second, the trial court may "require the prosecution to reoffer the plea proposal." *Id.* This remedy is usually more appropriate when "an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial." *Id.* Upon reoffer, "the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Id.*

The parties agree the second possibility is the proper remedy under the circumstances, *i.e.*, the government should be required to reoffer the 25-year plea deal under Rule 11(c)(1)(C) (which Olea-Monarez intends to accept). *See* Joint

12

Motion at 10. We agree that this second possibility is most appropriate here. Although it's not clear the 25-year offer was "for a guilty plea to a count or counts *less serious* than the ones for which a defendant was convicted after trial," *Lafler*, 566 U.S. at 171 (emphasis added), the jury convicted Olea-Monarez on a much broader swath of counts than those to which he would have pleaded guilty under the plea offer. Thus, the reoffer option most closely matches this case.

## IV.   CONCLUSION

We deny a COA as to Claim 1. As to Claim 2, we reverse the district court's denial of § 2255 relief and remand with instructions to order the government to reoffer its 25-year plea deal under Rule 11(c)(1)(C). Upon Olea-Monarez's acceptance of that offer, the district court may exercise its discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

The mandate shall issue forthwith.

Entered for the Court

Gregory A. Phillips
Circuit Judge

13